1  E. LEIF REID, Bar No. 5750
   LEWIS ROCA ROTHGERBER CHRISTIE LLP
2  One East Liberty Street, Suite 300
   Reno, Nevada 89501-2128
3  Tel: 775.823.2900
   Fax: 775.823.2929
4  lreid@lrrc.com

5  Attorneys for Defendant Skillz Inc.

6

7

8                    UNITED STATES DISTRICT COURT

9                         DISTRICT OF NEVADA

10  ALYSSA BALL                      CASE No. 2:20-cv-00888-JAD-BNW

11  and

12  JOHN PRIGNANO,                   **DEFENDANT SKILLZ INC.'S MOTION
                                     TO COMPEL ARBITRATION AND
                                     MOTION TO DISMISS**
13
                Plaintiffs,          **ORAL ARGUMENT REQUESTED**
14
         vs.                         Hearing Date:  To be determined by Court
15                                   Hearing Time:  To be determined by Court
    SKILLZ INC.,
16
                Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

Defendant Skillz Inc., by and through its undersigned counsel, hereby moves this Honorable Court for an order dismissing the Complaint as having been filed in violation of the parties' arbitration agreement pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) and the Federal Arbitration Act §§ 1-16, or, in the alternative, dismissing certain counts of the Complaint for lack of standing pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6).

This Motion is based upon the following Memorandum of Points and Authorities; the Declaration of Elliott Kaplan, filed concurrently herewith; the pleadings and papers on file in this action; argument as may be presented at or before the hearing; and all other matters of which the Court may take judicial notice.

DATED this 10th day of July, 2020.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: _/s/ E. Leif Reid_____
E. Leif Reid, SBN 5750
One East Liberty Street, Suite 300
Reno, Nevada 89501

*Attorneys for Defendant Skillz Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND.........................................................................................................................3

I. THE PARTIES' AND THEIR ARBITRATION AGREEMENT .........................................3

II. PLAINTIFFS ARE BANNED FOR CHEATING AND FILE THIS ACTION IN
VIOLATION OF THE PARTIES' ARBITRATION AGREEMENT...................................5

ARGUMENT ..............................................................................................................................6

I. THE COMPLAINT MUST BE DISMISSED OR STAYED PURSUANT TO THE
FEDERAL ARBITRATION ACT .....................................................................................6

II. COUNT IX MUST BE DISMISSED FOR LACK OF ARTICLE III AND
STATUTORY STANDING.............................................................................................11

III. COUNTS V AND VI MUST BE DISMISSED FOR LACK OF STATUTORY
STANDING ...................................................................................................................13

CONCLUSION ..........................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*ASUS Computer Int'l v. InterDigital, Inc.*,
    No. 15-CV-01716-BLF, 2015 WL 5186462 (N.D. Cal. Sept. 4, 2015) .............................. 8

*Baker v. Smith & Nephew Richards, Inc.*,
    No. 95-58737, 1999 WL 811334 (Tex. Dist. Ct. June 7, 1999) ....................................... 14

*Ballentine v. United States*,
    486 F.3d 806 (3d Cir. 2007) ............................................................................................. 12

*Ben & Jerry's Franchising, Inc. v. Porghavami*,
    No. CV 07-2599-LEW-KJM, 2008 WL 744722 (E.D. Cal. Mar. 14, 2008) ..................... 8

*Brennan v. Opus Bank, Corp.*,
    796 F.3d 1125 (9th Cir. 2015) ........................................................................................ 10

*Buckley v. Gallo Sales Co.*,
    949 F. Supp. 737 (N.D.Cal. 1996) ................................................................................... 8

*Central Bank of Denver, NA v. First Interstate Bank of Denver, NA*,
    511 U.S. 164 (1994) ........................................................................................................ 13

*Chappel v. Laboratory Corp. of America*,
    232 F.3d 719 (9th Cir. 2000) ............................................................................................ 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) .................................................................................... 7, 11

*Chrysler Corp. v. Brown*,
    441. U.S. 281 (1979) ...................................................................................................... 13

*Cort v. Ash*,
    422 U.S. 66 (1975) .......................................................................................................... 13

*Doe v. Broderick*,
    225 F.3d 440 (4th Cir. 2000) .......................................................................................... 13

*Doe v. Swift Transp. Co.*,
    No. 2:10-CV-0899 JWS, 2015 WL 274092 (D. Ariz. Jan. 22, 2015) ............................... 8

*Douglas v. Talk Am. Inc.*,
    No. CV06-3809GAF(RCX), 2006 WL 5217301 (C.D. Cal. Oct. 20, 2006) ..................... 8

*Dynegy Midstream Servs., Ltd. v. Apache Corp.*,
    294 S.W.3d 164 (Tex. 2009) ........................................................................................... 10

*Fadal Machining Ctrs., LLC v. Compumachine, Inc.*,
    461 Fed. App'x 630 (9th Cir. 2011) ................................................................................ 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ................................................................................ 12

*G.G. v. Valve Corp.,*
    799 Fed. Appx. 557 (9th Cir. 2020) .......................................................... 10

*Geographic Expeditions, Inc. v. Estate of Lhotka,*
    599 F.3d. 1102 (9th Cir. 2010) ................................................................... 8

*Godhart v. Tesla, Inc.,*
    No. 2:19-CV-01541-JAD-VCF, 2020 WL 2992414 (D. Nev. June 4, 2020) ................... 11

*Goldman, Sachs & Co. v. City of Reno,*
    747 F.3d 733 (9th Cir. 2014) ...................................................................... 9

*Harris v. United States,*
    841 F.2d 1097 (Fed. Cir. 1988) .................................................................. 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    139 S. Ct. 524 (2019) .............................................................................. 10

*Home Gambling Network, Inc. v. Piche,*
    No. CV 2:05-0610 DAE, 2007 WL 9734421 (D. Nev. 2007) ...................... 13

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002) .................................................................................. 10

*In re Palmdale Hills Prop., LLC,*
    654 F.3d 868 (9th Cir. 2011) .................................................................... 12

*Insco v. Aetna Health & Life Ins. Co.,*
    673 F. Supp. 2d 1180 (D. Nev. 2009) ...................................................... 14

*Johnson v. Enriquez,*
    460 S.W.3d 669 (Tex. App. 2015) ............................................................ 14

*Larson v. Homecomings Fin., LLC,*
    680 F. Supp. 2d 1230 (D. Nev. 2009) ...................................................... 14

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................................ 12

*Marshall v. Rogers,*
    No. 218CV00078JADCWH, 2018 WL 2370700 (D. Nev. May 24, 2018) ............. 7, 9, 10

*Mitschke v. Gosal Trucking, LDS.,*
    No. 2:14-CV-1099 JCM VCF, 2014 WL 5307950 (D. Nev. Oct. 16, 2014) ................... 14

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,*
    460 U.S. 1 (1983) .................................................................................... 7

*Prima Paint Corp. v. Flood & Conklin Mfr. Co.,*
    388 U.S. 395 (1967) ............................................................................ 7, 11

*Raebel v. Tesla, Inc.*,
　　No. 3:19-cv-00742-MMD-WGC, 2020 WL 1659929 (D. Nev. Apr. 3, 2020) .................. 8

*Rent-A-Center, West, Inc. v. Jackson*,
　　561 U.S. 63 (2010) ..................................................................................................... 9

*Sargeant v. Dixon*,
　　130 F.3d 1067 (D.C. Cir. 1997) .............................................................................. 12

*Simula, Inc. v. Autoliv, Inc.*,
　　175 F.3d 716 (9th Cir. 1999) .................................................................................. 11

*Steel Co. v. Citizens for a Better Environment*,
　　523 U.S. 83 (1998) ............................................................................................ 12, 13

*Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*,
　　368 F.3d 1053 (9th Cir. 2004) .................................................................................. 7

*U.S. ex rel. Lighting & Power Servs., Inc. v. Inferface Constr. Corp.*,
　　553 F.3d 1150 (8th Cir. 2009) .................................................................................. 8

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
　　No. 3:14-CV-1142-HZ, 2016 WL 3436415 (D. Or. June 16, 2016) ............................ 8

*W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick*,
　　39 Wash.App. 466, 694 P.2d 1101 (1985) ............................................................ 10

*Walker v. Neutron Holdings, Inc.*,
　　No. 1:19-CV-574-RP, 2020 WL 703268 (W.D. Tex. Feb. 11, 2020) .......................... 8

*Welday v. Summerlin Life & Health Ins. Co.*,
　　127 Nev. 1185 (2011) ............................................................................................ 10

*White v. Lee*,
　　227 F.3d 1214 (9th Cir. 2000) ................................................................................ 12

**Statutory Authorities**

9 U.S.C. §§ 1-16 ................................................................................................................ 6

9 U.S.C. § 2 ...................................................................................................................... 7

9 U.S.C. § 3 ...................................................................................................................... 7

18 U.S.C. § 1955 ............................................................................................................. 13

35 U.S.C. § 5363 ............................................................................................................. 13

Nev. Rev. Stat. § 463.160 .......................................................................................... 12, 13

Texas Penal Code § 47.03 ............................................................................................... 13

Texas Penal Code § 47.05 ............................................................................................... 13

**<u>Rules and Regulations</u>**

Fed. R. Civ. P. 12(b)(1) ........................................................................................................ 12

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 13, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

Skillz Inc. ("Skillz") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint as having been filed in violation of the parties' arbitration agreement or, in the alternative, to dismiss certain claims as to which Plaintiffs lack constitutional or statutory standing. In the face of a binding arbitration agreement, Plaintiffs filed a complaint in this Court so as to make false public allegations that would be protected by the litigation privilege in an improper attempt to extract money from Skillz. Plaintiffs' abuse of the court system should not be countenanced.

## PRELIMINARY STATEMENT

Skillz is one of the world's leading mobile games platforms, hosting skill-based esports competitions for tens of millions of players worldwide and distributing millions of dollars in prizes each month. Backed by leading venture capitalists, media companies, and professional sports leagues and franchises, Skillz has earned recognition as one of Forbes' Next Billion-Dollar Startups and CNBC's Disruptor 50.

Plaintiffs Alyssa Ball and John Prignano were, until recently, high-volume players of a solitaire-style game hosted by Skillz called 21 Blitz, in which participants can compete in paid entry competitions against other members of the Skillz community. Earlier this year, Skillz permanently banned Ball and Prignano from using any of its services, after an investigation determined that they were conspiring with each other to cheat on Skillz' platform. Skillz found that, among other things, Prignano and Ball threw games to one another to help themselves win cash prizes in league competitions. They also strategically aborted head-to-head games in a scheme to avoid losses by taking advantage of Skillz' policy of refunding entry fees to users who suffer a device malfunction or similar issue during a game. Prignano was also found to have engaged in pool-style hustling, *i.e.*, engaging in deliberately poor play in order to artificially lower his skill rating and secure matches against players of lesser ability. Such dishonest behavior violates Skillz' Terms of Service, and Skillz cannot and does not tolerate it, as Skillz is 100 percent committed to providing its player community with fair and level competition.

Ball's and Prignano's response to being banned was to file this action.  As experienced gamers undoubtedly familiar with the maxim "the best defense is a good offense," they have filed a complaint full of allegations that are inflammatory and salacious – and false.  They spin a story in which they are not cheaters, but victims who lost money to other supposed cheaters.  By their fanciful account, Skillz made up pretextual grounds to ban them to avoid having to refund their losses and, in Mr. Prignano's case, having to redeem reward points he accrued for a car.  Ratcheting up their baseless offense even further, they also accuse Skillz of running an "illegal gambling racket."

It is all nonsense and will be exposed as such if Plaintiffs are ever put to their proof.  But if and when that happens, it cannot be in this Court, because both Plaintiffs are party to an arbitration agreement with Skillz that requires any and all disputes arising from or relating to Plaintiffs' use of Skillz' services to be resolved by binding arbitration before the American Arbitration Association.  This arbitration agreement plainly extends to the claims in Plaintiffs' Complaint, all of which arise out of or relate to their play of 21 Blitz on Skillz' platform.  Plaintiffs, however, do not so much as mention the arbitration agreement in their Complaint, much less offer a justification for failing to comply with it.  There is no such justification, and, pursuant to the Federal Arbitration Act, Ball and Prignano must be compelled to arbitrate their claims.

In the alternative, even if Plaintiffs had not committed to arbitrate their claims, certain of the claims would be outside the Court's subject matter jurisdiction and/or fail to state a claim.  Counts V, VI, and IX of the Complaint, in particular, are all predicated on Skillz' supposed failure to comply with state and federal gambling statutes.  These statutes are inapplicable to Skillz, which hosts skill-based games, not gambling.  That aside, however, the statutes do not provide for a private cause of action and, therefore, cannot support the grant of any remedy to Plaintiffs.  In the case of Count IX, which seeks a declaratory judgment that Skillz violated the statutes, this means that Plaintiffs do not plead an Article III case or controversy sufficient to create subject matter jurisdiction and also fail to state a claim.  In the case of Counts V and VI, which assert "Negligence Per Se" based on supposed statutory violations, this means Plaintiffs fail to state a claim.  These counts must, therefore, be dismissed even if the entire Complaint is not.

## BACKGROUND

I.     **The Parties' And Their Arbitration Agreement**

Skillz is one of the world's leading mobile games platforms.  Kaplan Decl.[1] ¶ 3.  It hosts numerous online skill-based games, such as 21 Blitz, in which players can compete for cash prizes in head-to-head matches or tournament-style play.  *Id.*

In order to play games on Skillz' platform, a user must first create a Skillz' account using a smartphone or other device.  *Id.* ¶ 4.  Ball created her Skillz account on April 25, 2019 under the username "Lysnico."  *Id.* ¶ 7.  Prignano created his account on January 8, 2018 under the username "Prignum42."  *Id.*  A user cannot participate in paid entry competitions on Skillz' platform unless their Skillz account has been saved.  *Id.* ¶ 8.  Prignano saved his account no later than January 2, 2019, and Ball saved her account no later than April 25, 2019.  *Id.*  In the course of saving their accounts, Ball and Prignano both encountered the following screen:



---

[1]  Citations to "Kaplan Decl." are to the July 10, 2020 Declaration of Elliott Kaplan, filed herewith.

DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

*Id.* ¶ 4 (red outline added).  As shown by the red outline, below the box labeled "Next" was an advisory stating, "By tapping 'Next', I agree to the <u>Terms of Service and the Privacy Policy</u>."  *Id.* ¶ 5.  The underlined text in the advisory was a hyperlink, which, when clicked, brought the user to Skillz' Terms of Service and Privacy Policy.  *Id.* ¶ 5.

 The introduction to the Terms of Service again advises that a user who registers for an account with Skillz or uses Skillz' services agrees to be bound by the Terms of Service:

> BY REGISTERING FOR AN ACCOUNT WITH US (your "Account"), USING THE SERVICES IN ANY WAY, CLICKING "I ACCEPT" BELOW, DOWNLOADING ANY APPLICATION INTEGRATED WITH SKILLZ'S SDK (as further defined in Section 2.2 below, "Software"), OR REGISTERING FOR OR PARTICIPATING IN ANY COMPETITIONS, YOU:
> (A) ACKNOWLEDGE THAT YOU HAVE READ THESE TERMS AND CONDITIONS OF SERVICE AND ALL OBLIGATIONS AND RULES THAT MAY BE INCLUDED WITHIN EACH COMPETITION IN WHICH YOU PARTICIPATE ("Rules") (these Terms and Conditions of Service, the terms of any policy incorporated herein, and the Rules are collectively referred to as the "Terms") IN THEIR ENTIRETY; (B) AGREE TO BE BOUND BY THE TERMS; AND (C) ARE AUTHORIZED AND ABLE TO ACCEPT THESE TERMS. If you don't wish to be bound by the Terms, do not click "I accept" and do not register with Skillz ("Skillz", "we" or "us") and do not use the Services. Declining to accept these Terms means you will be unable to participate in Competitions or use your Skillz account.

Kaplan Decl. Ex. 3 (capitalization in original).  Ball and Prignano each clicked "Next" and thereby agreed to Skillz' Terms of Service.  Kaplan Decl. ¶¶ 5, 8.

 The very first provision of the Terms of Service (Section 1.1) states – in all capital letters – that any and all claims arising out of or relating to Skillz' Terms of Service, software or services must be resolved through arbitration:

> 1.1. ARBITRATION. TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW, ANY CLAIM, DISPUTE OR CONTROVERSY OF WHATEVER NATURE ("CLAIM") ARISING OUT OF OR RELATING TO THESE TERMS AND/OR OUR SOFTWARE OR SERVICES MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION IN ACCORDANCE WITH THE PROCESS DESCRIBED IN SECTION 14 BELOW. PLEASE READ SECTION 14 CAREFULLY. To the maximum extent permitted under applicable law, you are giving up the right to litigate (or participate in as a party or class member) all disputes in court before a judge or jury.

Kaplan Decl. Ex. 3 § 1.1 (capitalization in original).

Section 14 of the Terms of Service reiterates that any Dispute between Skillz and one of its account holders, if not resolved through negotiation or in small claims court, must be submitted to binding arbitration. *Id.* § 14.  The term "Dispute" is defined as "any dispute, action or other controversy between you and us concerning these Terms, the Services or any product, service or information we make available to you, whether in contract, warranty, tort, statute, regulation, ordinance or any other legal or equitable basis." *Id.*  For account holders who, like Ball and Prignano, are located in the United States, arbitration is to be conducted in San Francisco by the American Arbitration Association under its Commercial Arbitration Rules. *Id.* § 14.4.  Though Skillz' Terms of Service have been amended since Ball and Prignano saved their Skillz accounts, the aforementioned provisions relating to arbitration have been in force and unchanged at all times from the inception of their accounts through the present.  Kaplan Decl. ¶ 9, Exs. 3, 4.

**II.      Plaintiffs Are Banned For Cheating And File This Action In Violation Of The Parties' Arbitration Agreement**

As alleged in their Complaint, Ball and Prignano played 21 Blitz frequently and increased their skill level over time.  Complaint ¶¶ 33-34, 54, 57.  Prior to being banned, Ball and Prignano were both playing 21 Blitz for high dollars, competing in paid entry competitions with entry fees, on average, of hundreds of dollars each game.  *Id.* ¶¶ 34, 57.  There was a relatively small pool of players who played at that level.  *Id.* ¶ 36.  Ball and Prignano exploited that fact to collude with one another to cheat other high-dollar players on the platform.  Kaplan Decl. ¶ 13.

Skillz maintains a loyalty program, through which players earn "Ticketz" based on the frequency of their play, which can be redeemed for prizes.  *Id.* ¶ 10.  Prignano, who played tens of thousands of 21 Blitz and other games, accumulated a large amount of Ticketz and, in or about August 2019, attempted to redeem them for Skillz' top prize, a Porsche Boxster.  Complaint ¶¶ 58-60.  At about this same time, Skillz received complaints from Skillz community members about Prignano's gameplay, and investigated those complaints.  Kaplan Decl. ¶ 11.  Notably, in the course of the investigation, Prignano reiterated his assent to Skillz' Terms of Service in email correspondence.  *Id.*; Kaplan Decl. Ex. 5.  Prignano satisfied initial tests to show that his performance was consistent with his level of skill, but other players provided information to Skillz

in the form of text messages indicating that Prignano had been strategically aborting games in order to avoid losses, which Skillz confirmed through the use of analytics.  Kaplan Decl. ¶ 12. Other text messages provided to Skillz evidenced that Prignano had colluded with Ball to manipulate the results of tournament play by throwing games, which analytics again confirmed. *Id.* ¶ 13.  Such conduct violates Skillz' Terms of Service, which prohibits cheating, fraud, and abuse.  *Id.* ¶ 14.  Accordingly, based on the findings of its investigation,[2] Skillz notified Prignano on March 13, 2020 that he had been permanently banned from Skillz' platform and that his winnings would be forfeited and/or subject to recoupment.  *Id.* ¶ 15.  Ball was given the same notice on April 28, 2020.  *Id.* ¶ 16.

Plaintiffs responded to being banned by filing this action on May 17, 2020.  The gist of Plaintiffs' allegations is that Plaintiffs collectively lost approximately $1,500,000 to other 21 Blitz users who cheated, and Skillz banned Plaintiffs on pretextual grounds to avoid having to refund them those losses.  Every one of the Complaint's nine asserted claims concerns Skillz' Terms of Service, Skillz' products and/or services, and/or Plaintiffs' use thereof.  Complaint ¶¶ 89-162. The Complaint makes no mention of the parties' arbitration agreement.

## **ARGUMENT**

## I.   THE COMPLAINT MUST BE DISMISSED OR STAYED PURSUANT TO THE FEDERAL ARBITRATION ACT

Plaintiffs' Complaint must be dismissed or stayed pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, because all of the claims asserted in the Complaint fall within the scope of the parties' arbitration agreement.

Section 2 of the FAA provides that:

A written provision in . . . a contract evidencing a transaction involving commerce[3] to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[2]   The above is not intended to fully describe the scope and findings of Skillz' investigation of Plaintiffs' illicit activities.

[3]   There is no dispute that conduct alleged in the Complaint constitutes interstate commerce. *See, e.g.*, Complaint ¶¶ 7-9, 11, 34, 57, 74.

9 U.S.C. § 2.  "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ."  *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

Section 3 of the FAA puts teeth in Section 2 and directs Courts to enforce it when asked to do so:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

This Court, in a recent case, summarized the mandatory nature of the FAA and the manner in which courts must apply it:

> By its terms, the [FAA] "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." The party seeking to compel arbitration has the burden to show that both of these questions must be answered in the affirmative. "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."

*Marshall v. Rogers*, No. 218CV00078JADCWH, 2018 WL 2370700, at *2 (D. Nev. May 24, 2018) (internal citations omitted); *see also Prima Paint Corp. v. Flood & Conklin Mfr. Co.*, 388 U.S. 395, 400 (1967); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Although the FAA speaks in terms of staying a case covered by an arbitration agreement, the Ninth Circuit has held that courts may dismiss a case where the complaint includes only claims subject to arbitration.  *See Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368

F.3d 1053, 1060 (9th Cir. 2004); *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 725 (9th Cir. 2000).[4]

In this case, it is indisputable that a valid agreement to arbitrate exists.  As detailed above, Ball and Prignano each assented to Skillz' Terms of Service at the time they saved their Skillz accounts (*see* pp. 3-4, *supra*), and the Terms of Service expressly specify that "any dispute, action or other controversy between [Plaintiffs] and [Skillz] concerning these Terms, the Services or any product, service or information [Skillz] make[s] available to [Plaintiffs], whether in contract, warranty, tort, statute, regulation, ordinance or any other legal or equitable basis" is subject to mandatory, binding arbitration before the American Arbitration Association under its Commercial Arbitration Rules."  Kaplan Decl. Ex. 3.

Agreements formed in this manner – through a user taking an action in an app or website expressly conditioned on his or her assent to terms made electronically available for review – are valid and enforceable.  *See, e.g.*, *Raebel v. Tesla, Inc.*, No. 3:19-cv-00742-MMD-WGC, 2020 WL 1659929, at *3-4 (D. Nev. Apr. 3, 2020) (valid arbitration agreement formed under Nevada law where defendant clicked "Place Order" button that was directly over a legend stating "[b]y clicking 'Place Order' I agree to the Model 3 Order Agreement" and legend contained a hyperlink to the agreement); *Walker v. Neutron Holdings, Inc.*, No. 1:19-CV-574-RP, 2020 WL 703268, at *4 (W.D. Tex. Feb. 11, 2020) (valid arbitration agreement formed under Texas law where "a reasonable user would view the . . . sign-in screen and see that the [Terms of Service] is part of the offer to proceed with the transaction by clicking 'NEXT'"); *see also Marshall*, 2018 WL 2370700,

---

[4]  Federal Rule of Civil Procedure 12(b)(1) is a proper vehicle to move to stay or dismiss arbitrable claims.  *See, e.g.*, *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d. 1102, 1106–07 (9th Cir. 2010); *U.S. ex rel. Lighting & Power Servs., Inc. v. Inferface Constr. Corp.*, 553 F.3d 1150, 1152 (8th Cir. 2009); *Harris v. United States*, 841 F.2d 1097, 1099 (Fed. Cir. 1988); *Buckley v. Gallo Sales Co.*, 949 F. Supp. 737, 739-40 (N.D.Cal. 1996); *ASUS Computer Int'l v. InterDigital, Inc.*, No. 15-CV-01716-BLF, 2015 WL 5186462, at *2 (N.D. Cal. Sept. 4, 2015); *Doe v. Swift Transp. Co.*, No. 2:10-CV-00899 JWS, 2015 WL 274092, at *4 (D. Ariz. Jan. 22, 2015); *Ben & Jerry's Franchising, Inc. v. Porghavami*, No. CV 07-2599-LEW-KJM, 2008 WL 744722, at *1 (E.D. Cal. Mar. 14, 2008); *Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 3:14-CV-1142-HZ, 2016 WL 3436415, at *4 (D. Or. June 16, 2016); *Douglas v. Talk Am. Inc.*, No. CV06-3809GAF(RCX), 2006 WL 5217301, at *1 (C.D. Cal. Oct. 20, 2006).

at *3 (valid arbitration agreement formed under California law where "users were informed that, by signing up for an Airbnb account, they were agreeing to the TOS, which was hyperlinked in the sign-up screen so users could click and read the full document before committing").[5]

It is also indisputable that Ball's and Prignano's claims fall within the scope of the parties' arbitration agreement. The Court need not address that question in this case, however, because, by agreeing to the American Arbitration Association ("AAA")'s Commercial Rules, the parties delegated the question of arbitrability to the arbitrators. They did so by agreeing to the AAA's Commercial Rules of Arbitration, which provide that "[t]he arbitrator shall have the power to rule on his or her jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Arbitration Rules, R-7(a).

The United States Supreme Court has determined "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. If the parties have "clearly and unmistakably" agreed that questions of arbitrability must be decided by the arbitrator, such provisions must be enforced. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation and citation omitted); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.").

/ / /

---

[5] "'When determining whether parties have agreed to submit to arbitration,' federal courts 'apply general state-law principles of contract interpretation, while giving due regard to federal policy in favor of arbitration by resolving ambiguities as to scope of the arbitration in favor of arbitration.'" *Marshall*, 2018 WL 2370700, at *2 (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (internal quotation marks and quoted references omitted)).

The Ninth Circuit has repeatedly held that parties who agree to the rules of the American Arbitration Association agree to delegate questions concerning the scope of their arbitration agreement and whether it covers particular claims to the arbitrator. *See Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 Fed. App'x 630, 632 (9th Cir. 2011) (incorporation of the AAA rules into an arbitration agreement "shows a clear and unmistakable intent to delegate questions of scope to the arbitrator"); *Brennan v. Opus Bank, Corp.*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[W]e hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *G.G. v. Valve Corp.*, 799 Fed. Appx. 557, 558 (9th Cir. 2020) (finding a teenager had "clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporates AAA Rules").[6]

Finally, even if the parties had not delegated questions of arbitrability to the arbitrator, the language of their arbitration agreement leaves no doubt that it covers the claims asserted in Plaintiffs' Complaint. Section 1.1 of Skillz' Terms of Service extends the parties' arbitration agreement to "any claim, dispute or controversy of whatever nature ("claim") arising out of or relating to these terms and/or our software or services." Kaplan Decl. Ex. 3. Section 14.1 further extends the arbitration agreement to "any dispute, action or other controversy between you and us concerning these Terms, the Services or any product, service or information we make available to

---

[6] In *Marshall*, this Court raised but did not decide the question of whether the ruling of *Brennan* should apply to consumer contracts where one party is potentially less sophisticated than the other party. *See Marshall*, 2018 WL 2370700 at *7. The Ninth Circuit subsequently answered this question in the affirmative in *Valve Corp.*, in which it held that a group of "teenagers clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporates AAA rules." 799 Fed. Appx. at 558. The court explained that "[t]he parties' degree of sophistication does not change this conclusion because, under Washington law, '[c]ourts presume that parties to an agreement have read all parts of the entire contract and intend what is stated in its objective terms[.]'" *Id.* (citing *W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick*, 39 Wash.App. 466, 694 P.2d 1101, 1104 (1985)). Of course, this hornbook principle of contact law – that parties are presumed to have read the contracts they sign and meant to be bound by their terms – is the same regardless of which state law is applied to the parties' contract here. *See, e.g., Welday v. Summerlin Life & Health Ins. Co.*, 127 Nev. 1185 (2011) ("We give contractual terms their plain and ordinary meaning."); *Dynegy Midstream Servs., Ltd. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) ("We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning.").

you, whether in contract, warranty, tort, statute, regulation, ordinance or any other legal or equitable basis." *Id.*

Courts regularly recognize that such broad terms reach all claims having any connection to the relationship between the parties. *See, e.g.*, *Godhart v. Tesla, Inc.*, No. 2:19-CV-01541-JAD-VCF, 2020 WL 2992414, at *4 (D. Nev. June 4, 2020) (arbitration clause applicable to "any disputes arising out of or relating to" held "broad enough to encompass" all the claims advanced by the plaintiff); *Prima Paint Corp.*, 388 U.S. at 398, 406 (arbitration clause that contains "any controversy or claim arising out of or relating to this agreement" is "easily broad enough to encompass [plaintiff's claim"); *Chiron Corp.*, 207 F.3d at 1131 (arbitration agreement that contains "[a]ny dispute, controversy, or claim arising out of or relating to" is "broad and far reaching"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("[T]he language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.").

In this case, Ball's and Prignano's agreement to arbitrate claims of any kind or nature "arising out of or relating to" or "concerning" Skillz' Terms of Service, products or services unquestionably reaches all of the claims asserted in their Complaint. All of their alleged claims arise from, relate to, and concern Plaintiffs' use of Skillz' products and services – *i.e.*, their playing of 21 Blitz and other Skillz' games on Skillz' platform – after assenting to Skillz' Terms of Service. Complaint ¶¶ 89-162.

Accordingly, because Plaintiffs are party to a valid arbitration agreement that delegates questions of arbitrability to an arbitrator, the FAA, as interpreted by the Supreme Court, the Ninth Circuit, and this Court, requires the Court to enforce the arbitration agreement and dismiss Plaintiffs claims in favor of arbitration.

## II. COUNT IX MUST BE DISMISSED FOR LACK OF ARTICLE III AND STATUTORY STANDING

In the event the Court does not dismiss Plaintiffs' entire Complaint pursuant to the FAA, the Court must dismiss Count IX pursuant to Rule 12 (b)(1) for lack of subject matter jurisdiction, as Plaintiffs do not have the requisite Article III standing. Article III standing is a necessary

component of subject matter jurisdiction and is "properly raised in a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) . . . ." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011) ("Article III standing is a necessary component of subject matter jurisdiction."); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.").

To have Article III standing, Plaintiffs must show (1) they have suffered an "injury in fact," *i.e.*, an actual or imminent injury that is concrete and particularized; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is likely, as opposed to merely speculative, that "the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). An "injury in fact," requires an invasion of a "legally cognizable interest," which "means an interest recognized at common law or specifically recognized as such by the Congress." *Sargeant v. Dixon*, 130 F.3d 1067, 1069 (D.C. Cir. 1997). To establish redressability, Plaintiffs must allege clear and specific facts showing that it is likely that the relief sought will remedy plaintiff's injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The redressability requirement is not met if the relief sought "does not remedy the injury suffered." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998).

Without conceding that Plaintiffs satisfy *any* of the requirements for Article III standing with respect to Count IX, they clearly fail to satisfy the redressability requirement. Count IX seeks a declaratory judgment that Skillz' "operation of the 21 Blitz app" violates certain criminal statutes of Texas and the United States relating to gambling, as well as Section 463.160 of the Nevada Gaming Statutes, which makes it "unlawful" to "expose for play . . . any gambling game . . . without having first procured... all federal, state, county and municipal gaming licenses or registrations." Complaint at 27-28 (Count IX). Even if granted, though, the requested declaration that Skillz violates the cited gambling statutes (and, to be clear, Skillz does not) would do nothing at all to redress the only injury Plaintiffs allege in their complaint – their supposed monetary injury resulting from their past play of 21 Blitz and from Skillz' refusal to disburse their account

balances.  None of the statutes cited in Count IX provides for a private cause of action or other mechanism through which Plaintiffs could recover these allegedly lost sums by proving a violation.  35 U.S.C. § 5363; 18 U.S.C. § 1955; Texas Penal Code §§ 47.03, 47.05; Nev. Rev. Stat. § 463.160; *see also Home Gambling Network, Inc. v. Piche*, No. CV 2:05-0610 DAE, 2007 WL 9734421 at *8 (D. Nev. 2007) (holding there is no private cause of action allowed under Nevada Gaming Statutes).[7]  The only thing Plaintiffs could gain from succeeding on Count IX is whatever "comfort or joy" they might derive from showing that Skillz' violated the law, but the Supreme Court has held that such "psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury."  *Steel Co.*, 523 U.S. at 107.  Count IX must, therefore, be dismissed for lack of Article III standing.

In addition, because Plaintiffs seek a declaratory judgment that Skillz violated statutes that do not vest Plaintiffs with a private right of action, Count IX also fails to state a claim upon which relief can be granted, and should be dismissed pursuant to Rule 12(b)(6) as well.

## III.   COUNTS V AND VI MUST BE DISMISSED FOR LACK OF STATUTORY STANDING

In the event the Court does not dismiss Plaintiffs' entire Complaint pursuant to the FAA, this Court should dismiss Counts V and VI pursuant to Rule 12(b)(6), because Plaintiffs lack statutory standing and thus fail to state a claim.

In Counts V and VI, Plaintiffs assert purported causes of action for "Negligence Per Se" based on Skillz' supposed violations of the same Nevada and Texas gambling statutes cited in

---

[7]  *See also Chrysler Corp. v. Brown*, 441. U.S. 281, 316 (1979) ("In *Cort v. Ash*, 422 U.S. 66 (1975), we noted that this Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'"); *Doe v. Broderick*, 225 F.3d 440, 447-48 (4th Cir. 2000) ("The Supreme Court historically has been loath to infer a private right of action from 'a bare criminal statute,' because criminal statutes are usually couched in terms that afford protection to the general public instead of a discrete, well-defined group.")(citation omitted); *Central Bank of Denver, NA v. First Interstate Bank of Denver, NA*, 511 U.S. 164, 190-91 (1994) ("There would be no logical stopping point to this line of reasoning:  Every criminal statute passed for the benefit of some particular class of persons would carry with it a concomitant civil damages cause of action.  This approach, with its far-reaching consequences, would work a significant shift in settled interpretive principles regarding implied causes of action.  We are unwilling to reverse course in this case.") (citation omitted).

Count IX.  As noted above, however, those statutes do not provide for a private cause of action. *See* p. 13, *supra*.  Plaintiffs may not circumvent this fact by labeling their claims "Negligence Per Se".  *See, e.g. Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1236 (D. Nev. 2009) (violation of a statute that provides no private right of action cannot serve as the basis of a claim for "negligence per se"); *Baker v. Smith & Nephew Richards, Inc.*, No. 95-58737, 1999 WL 811334, at *18 (Tex. Dist. Ct. June 7, 1999) (denying the plaintiff's attempt to "effectively . . . enforce" statutes lacking a private cause of action through a "negligence per se" claim).  Indeed, "negligence per se" is not even a cause of action under Nevada law or Texas law.  *See, e.g., Mitschke v. Gosal Trucking, LDS.*, No. 2:14-CV-1099 JCM VCF, 2014 WL 5307950, at *2 (D. Nev. Oct. 16, 2014) (dismissing plaintiffs negligence per se claim as it is not a separate cause of action)[8]; *Johnson v. Enriquez*, 460 S.W.3d 669, 673 (Tex. App. 2015) ("Negligence per se is not a separate cause of action . . . .  Rather, negligence per se is merely one method of proving a breach of duty, a requisite element of any negligence cause of action.").  Counts V and VI, therefore, fail to state a claim and must be dismissed pursuant to Rule 12(b)(6) if the Complaint is not dismissed pursuant to the FAA.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[8]  *See also Insco v. Aetna Health & Life Ins. Co.*, 673 F. Supp. 2d 1180, 1191 (D. Nev. 2009) ("[N]egligence per se is not a separate cause of action but a doctrine whereby a court will consider the negligence elements of duty and breach satisfied as a matter of law.").

Case No.   2:20-cv-00888-JAD-BNW
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint in favor of arbitration for lack of subject matter jurisdiction or, in the alternative, dismiss Count IX of the Complaint for lack of subject matter jurisdiction and/or failure to state a claim, and dismiss Counts V and VI for failure to state a claim.

DATED this 10th day of July, 2020.

LEWIS ROCA ROTHGERBER CHRISTIE LLP


By: _/s/ E. Leif Reid_____
E. Leif Reid, SBN 5750
One East Liberty Street, Suite 300
Reno, Nevada 89501

*Attorneys for Defendant Skillz Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that I am an employee of Lewis Roca Rothgerber Christie LLP, and that on this date, I caused the foregoing **DEFENDANT SKILLZ INC.'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS** to be served by electronically filing the foregoing with the CM/ECF electronic filing system, which will send notice of electronic filing to the following:

> Maurice VerStandig
> The VerStandig Law Firm, LLC
> 1452 W. Horizon Ridge Pkwy, #665
> Henderson, Nevada 89012
> mac@mbvesq.com

*/s/ Autumn D. McDannald*
An Employee of Lewis Roca Rothgerber Christie LLP

**INDEX OF EXHIBITS**

| Exhibit No. | Description | No. of Pages |
|---|---|---|
|  | Declaration of Elliott Kaplan in Support of Defendant Skillz Inc.'s Motion to Compel Arbitration and Motion to Dismiss | 6 |
| 1 | Email exchange between Skillz Inc. and Plaintiff John Prignano on March 13, 2020 [FILED UNDER SEAL] | 3 |
| 2 | Email exchange between Skillz Inc and Plaintiff Alyssa Ball on April 28, 2020 [FILED UNDER SEAL] | 3 |
| 3 | Skillz' Terms of Service (updated Sept. 21, 2017) | 18 |
| 4 | Skillz' Terms of Service (updated Oct. 10, 2019) | 68 |
| 5 | Email exchange between Skillz Inc. and Plaintiff John Prignano on January 14, 2020 [FILED UNDER SEAL] | 3 |