Maurice VerStandig, Esq.
Nevada Bar No.: 15346
THE VERSTANDIG LAW FIRM, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: (301)444-4600
Facsimile: (301)444-4600
Email:   mac@mbvesq.com
*Counsel for Ms. Ball, Mr.
Prignano and Jane Roe*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ALYSSA BALL, | * |
| | * |
| JOHN PRIGNANO, | * |
| | * |
| and | * |
| | *     Case No. 2:20-cv-888 -JAD-BNW |
| JANE ROE, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| SKILLZ INC., | * |
| | * |
| Defendant. | * |

**OPPOSITION TO DEFENDANT SKILLZ INC.'S
MOTION TO COMPEL ARBITRATION AND MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**



## <u>TABLE OF CONTENTS</u>

I.     Introduction ....................................................................................................... 1

II.    Relevant Facts ................................................................................................... 2

III.   Argument .......................................................................................................... 5

     a.   The Plaintiffs Did Not Enter Into the Agreement ...................................... 5

     b.   The Agreement is Unenforceable .............................................................. 8

         i.   The Arbitration Clause of the Agreement is Unconscionable ........... 8

         ii.  The Agreement is Unsupported by any Lawful Consideration ...... 13

     c.   The Declaratory Judgment Counts are Necessary to Establish Illegality for Consumer Protection Purposes and to Overcome the Agreement if it is Otherwise Found to be Valid and Enforceable ........................... 19

         i.   Standard ....................................................................................... 19

         ii.  Count X – Agreement Viability .................................................... 20

         iii. Count XI – Illegality .................................................................... 22

IV.    Conclusion ...................................................................................................... 23



# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adler v. Fed. Republic of Nigeria*, 219 F.3d 869 (9th Cir. 2000) ................................................ 17

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) ........................................................ 10

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........................................................... 9

*Bart St. III v. ACC Enterprises, LLC*, 2018 WL 4682318 (D. Nev. 2018) ................................. 14

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ........................................ 15, 16

*Carlton v. Whitcher*, 5 N. H. 198 (1830) .................................................................................... 17

*Cicippio v. Islamic Republic of Iran*, 30 F.3d 164 (D.C. Cir. 1994) .......................................... 17

*Circuit City Stores v. Adams*, 279 F.3d 889 (9th Cir. 2002) ........................................................ 6

*Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997) .............................................. 10

*Colwell v. HHS*, 558 F.3d 1112 (9th Cir. 2009) ........................................................................ 19

*Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143 (9th Cir. 1986) ........................................... 14

*Cox v. Station Casinos, LLC*, 2014 WL 3747605 (D. Nev. 2014) .............................................. 14

*D.R. Horton v. Green*, 96 P.3d 1159 (Nev. 2004) ..................................................................... 10

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996) ...................................................... 9

*Downs v. Napolitano*, 125 Nev. 1032 (2009) ............................................................................ 18

*Drexler v. Tyrrell*, 15 Nev. 114 (1880) ...................................................................................... 18

*Epic Sys. Corp. v. Lewis*, – U.S. –, 138 S. Ct. 1612 (2018) ........................................................ 9

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) .................................................. 6

*Garforth v. Fearon*, 1 H. Bl. 327 (1787) ................................................................................... 17

*Gaston v. Drake*, 14 Nev. 175 (1879) ........................................................................................ 17



*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ...................................................... 10

*Golberg v. Sanglier*, 616 P.2d 1239 (Wash. Ct. App. 1980) ....................................................... 14

*Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164 (Nev. 2010) ...... 10

*Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1 (1st Cir. 2012) ........................................................ 7

*Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) ........................................ 9, 10

*Grosvenor v. Qwest Corp.*, 733 F.3d 990 (10th Cir. 2013) ......................................................... 6

*Guerra v. Hertz Corp.*, 504 F. Supp. 2d 1014 (D. Nev. 2007) .................................................. 11

*Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 767 F.3d 912 (9th Cir. 2014) .. 14

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) ............................................... 6

*Keddie v. Beneficial Insurance, Inc.*, 580 P.2d 955 (Nev. 1978) ............................................... 6

*Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir. 1984) ..................................................... 17

*Linebarger v. Devine*, 214 P. 532 (Nev. 1923) ....................................................................... 14

*Mack v. Estate of Mack*, 206 P.3d 98 (Nev. 2009) .................................................................. 13

*Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 6462089 (N.D. Cal. 2016) .................. 7

*Martinez v. Johnson*, 61 Nev. 125 (1941) ............................................................................... 18

*May v. Anderson*, 119 P.3d 1254 (Nev. 2005) ......................................................................... 6

*McCausland v. Ralston*, 12 Nev. 195 (1877) .......................................................................... 17

*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941) ...................................................... 19

*Montana Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184 (9th Cir. 2014) ........................... 19

*Moule v. United Parcel Serv. Co.*, 2016 WL 3648961 (E.D. Cal. 2016) ..................................... 6

*Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038 (9th Cir. 2008) ...................................... 20

*Oahn Nguyen Chung v. StudentCity.com, Inc.*, 2011 WL 4074297 (D. Mass. 2011) .................. 7

*Perry v. Thomas*, 482 U.S. 483 (1987) .................................................................................... 9



*Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159 (D. Colo. 2019) .................................................7

*Powers v. Skinner*, 34 Vt. 281 (1861) ...........................................................................17

*Raebel v. Tesla, Inc.*, – F.Supp. 3d –, 2020 WL 1659929 (D. Nev. 2020) ..................................9

*Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999)......................10

*Simms v. Navient Sols., Inc.*, 157 F. Supp. 3d 870 (D. Nev. 2016) ..........................................10

*Stiener v. Apple Computer, Inc.*, 556 F. Supp. 2d 1016 (N.D. Cal. 2008)....................................7

*Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931 (9th Cir. 2001)........................................9, 17

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) .....................................................................10

*U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32 (Nev. 2018).......................................9

*United States v. Braren*, 338 F.3d 971 (9th Cir. 2003) .........................................................19

*Vincent v. Santa Cruz*, 647 P.2d 379 (Nev. 1982) .........................................................14, 18

*Williams v. Univ. Med. Ctr. of S. Nevada*, 688 F. Supp. 2d 1134 (D. Nev. 2010) .....................13


**Statutes**

9 United States Code § 2.........................................................................................8, 9

28 United States Code § 2801..................................................................................19

Colorado Revised Statutes § 6-1-105 .......................................................................21

Colorado Revised Statutes § 18-10-102 ....................................................................13

Nevada Revised Statutes § 463.0152........................................................................14

Nevada Revised Statutes § 463.160...........................................................................14

Nevada Revised Statutes § 463.750...........................................................................15

Nevada Revised Statutes § 598.0923.........................................................................21



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Texas Penal Code § 47.03 ............................................................................................ 15

Texas Penal Code § 47.05 ............................................................................................ 15

**Rules**

Federal Rule of Civil Procedure 11 ............................................................................. 18

**Treatises**

1 Story on Contracts ..................................................................................................... 18

2 Chitty on Contracts ................................................................................................... 18

6A Corbin on Contracts ............................................................................................... 17

Metcalf on Contracts .................................................................................................... 18

Story's Equity Jurisprudence Volume 1 ....................................................................... 17

Witkin, Summary of California Law ............................................................................. 17

**Films**

Cool Hand Luke, (1967) ................................................................................................ 8

**Books**

E. Hemingway, The Old Man and the Sea (1952) ...................................................... 13



Come now Alyssa Ball ("Ms. Ball"), John Prignano ("Mr. Prignano") and Jane Roe[1] (Ms. Ball, Mr. Prignano and Jane Roe being collectively known as the "Plaintiffs" and each sometimes being known as a "Plaintiff"), by and through undersigned counsel, and in opposition to the motion to compel arbitration and dismiss (the "Motion," as found at DE #22 and DE #23) filed by Skillz Inc. ("Skillz" or the "Defendant") state as follows:

## I.   Introduction

The Defendant seeks to compel arbitration of this case pursuant to a putative agreement not made readily visible to the consumers purportedly bound. In so doing, the Defendant also seeks to compel the Plaintiffs to each pay one half the appreciable fees associated with commercial arbitration (including compensation of an arbitrator), to force the Plaintiffs to bring separate cases, and to cap the Plaintiffs' damages at $50 per person. In short, what the Defendant seeks is to strip the Plaintiffs of any genuine ability to have their claims adjudicated.

Inasmuch as the Federal Arbitration Act reserves to this Honorable Court challenges as to the arbitrability of a dispute, it is respectfully urged the Motion be denied. As discussed in greater detail *infra*, such denial is appropriate as (i) there has been no meeting of the minds requisite to create an arbitration agreement; (ii) the putative agreement is both substantively and procedurally unconscionable in nature; and (iii) the putative agreement is wholly unsupported by any valid legal consideration and thus not properly severable under governing law.

The Defendant additionally seeks dismissal of two declaratory judgment claims, respectively seeking findings that (a) the agreement containing the arbitration clause is void as a

---

[1] Jane Roe has filed a motion to proceed under a fictitious name in this litigation (DE #10), which is presently under advisement. Jane Roe's real name is indicated on a certificate of interested parties filed under seal (DE #12) and has been shared with all parties herein through their respective counsel.


VerStandig
LAW FIRM

matter of law; and (b) the Defendant's operations are in contravention of numerous federal and state criminal laws. The Motion merits denial on these fronts as the voiding of the putative agreement is instrumental to adjudicating the respective rights and obligations of the parties in this suit, and declaring the illegality of the Defendant's operation of an unlicensed online casino informs the basis for such voiding as well as the availability of relief under the consumer protection statutes invoked by the Plaintiffs herein.

## II.    Relevant Facts

This suit concerns allegations the Defendant operates an illegal online casino in contravention of myriad criminal and consumer protection laws. *See* First Amended Complaint (the "Complaint"), DE #11, *passim*.

Jane Roe alleges she was duped into using the Defendant's mobile phone apps believing they were something other than gambling platforms, formed a gambling addiction, lost her life's savings, went heavily into debt, became depressed and despondent, and continues to suffer appreciable mental anguish. *Id.* at ¶¶ 2, 89-116. She seeks recourse under, *inter alia*, the Colorado Consumer Protection Act, contending the Defendant's operations and advertising scheme to be comprised of various deceptive and unfair trade practices. *Id.* at ¶¶ 180-201.

Ms. Ball and Mr. Prignano allege the Defendant has illegally impounded their account balances collectively totaling hundreds of thousands of dollars, failed to refund them more than a million dollars in money out of which they were cheated on the Defendant's platforms, and, in the case of Mr. Prignano, failed to deliver a Porsche Boxster rightfully won. *Id.* at ¶¶ 6-7, 36-76.

They seek recourse under various common law allowances as well as governing consumer protection laws. *Id.* at ¶¶ 132-179.[2]

All three Plaintiffs also seek entry of two declaratory judgments, one addressing the Defendant's illegality and one voiding the Defendant's terms of service (the "Agreement"). *Id.* at ¶¶ 202-216.

The majority of the Motion is directed toward the Defendant's desire to compel arbitration of this case pursuant to a clause in the Agreement. *See* Motion, *passim*. The two counts for which the Motion seeks outright dismissal do not require any independent presentation of background facts and are respectively discussed *infra*.

Neither Ms. Ball nor Jane Roe ever saw the Agreement prior to their seeking counsel in this matter. *See* Declaration of Alyssa Ball ("Ball Dec."), attached hereto as Exhibit A ("Ex. A"), at ¶ 2; Declaration of Jane Roe ("Roe Dec."), attached hereto as Exhibit B ("Ex. B"), at ¶ 2. Mr. Prignano became aware of the Agreement after commencing play on the Defendant's smartphone apps but prior to the conclusion of the events at issue *sub judice*. *See* Declaration of John Prignano ("Prignano Dec."), attached hereto as Exhibit C ("Ex. C"), at ¶ 2.

Mr. Prignano claimed to acquiesce to the Agreement only after the Defendant threatened to freeze his account and impound his money; his acquiescence was thusly (i) long after his play had begun; (ii) well after the majority of the issues in this case arose; and (iii) under *de facto*

---

[2] The Motion alleges Ms. Ball and Mr. Prignano "were conspiring with each other to cheat on Skillz' platform." Motion at 1:19. Ms. Ball and Mr. Prignano not only deny this allegation in the strongest possible terms but, too, note that Skillz never accused either of cheating until (i) Skillz' chief executive officer failed in his thinly-veiled efforts to arrange a sexual rendezvous with Ms. Ball, a 19-year-old woman, in Las Vegas (Complaint at ¶¶ 5-6, 56); and (ii) Skillz was either unwilling or unable to furnish Mr. Prignano with a Porsche Boxster he won on the company's platform (Complaint at ¶¶ 7, 66-67). The Complaint makes clear the allegations of Ms. Ball and Mr. Prignano cheating are both pretextual and counterfactual. Complaint at ¶¶ 6-7, 56, 68.



duress as it came solely upon the Defendant's economic threatening of Mr. Prignano. *See* Prignano Dec., Ex. C, at ¶ 5.

Consumers of the Defendant are never asked to check a box indicating they have read the Agreement, to view or "scroll through" the Agreement, to click on text expressly referencing the Agreement, or to sign the Agreement. *See* DE #23-2 at p. 3. Rather, as noted in an exhibit to the Motion itself, users are presented with the following screen when registering to deposit money into the Defendant's smartphone apps:



DE #23-2 at p. 3.

As evidenced by the Defendant's own image, a user is asked to enter her or his date of birth and to then click a large button labeled "NEXT." *Id.* Only if a consumer sees and reads



beneath that button prior to clicking it – which inherently goes against the tendency of English speakers to read left to right, top to bottom, and to engage an action item when so presented – will the user even see a reference to the Agreement. *Id.*

None of the Plaintiffs recollect seeing the reference to the Agreement when registering for the Defendant's gaming platforms. *See* Ball Dec., Ex. A, at ¶ 3; Roe Dec., Ex. B, at ¶ 3; Prignano Dec., Ex. C, at ¶ 3. The Defendant has not indicated if it maintains any records of how many – if any – consumers actually engage the hyperlink to review the Agreement prior to clicking the appreciably larger "NEXT" bottom above the fine print containing the hyperlink. *See* Motion, *passim*.

It appears the "NEXT" button is approximately five times the size of the fine print beneath it referencing the Agreement; it appears the word "NEXT" itself is approximately two and one half times the size of the same fine print.[3] The reference to the Agreement is made in the smallest print on the subject screen, even though the graphic outlay leaves ample room for the text to be presented in appreciably larger print. The graphic outlay similarly leaves space where the text could be presented above the "NEXT" button and thus visible to someone reading top-to-bottom prior to the subject consumer clicking the indicated button.

### III.   Argument

#### a.  The Plaintiffs Did Not Enter Into the Agreement

The Plaintiffs did not agree to arbitrate claims with the Defendant. For this relatively simple reason, the Motion merits denial as arbitration cannot be compelled in the absence of an actual agreement to arbitrate, and no such agreement was formed between the parties hereto.

---

[3] These calculations are based on an informal measurement of the graphic excerpted above. They are neither precise nor scientific.



While the putative Agreement does contain an arbitration clause (which, as discussed *infra*, is neither severable nor enforceable), the Plaintiffs never viewed the Agreement prior to bringing this suit, were never shown the Agreement prior to this suit, were never asked to check any box acknowledging the Agreement, were never made to sign any acknowledgement of the Agreement, or – in the cases of Ms. Ball and Jane Roe – even so much as put on actual notice of the Agreement. There is, thusly, no Agreement between the parties.

As the United States Court of Appeals for the Ninth Circuit has observed, "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Circuit City Stores, Inc*., 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). *See also*, *Moule v. United Parcel Serv. Co.*, 2016 WL 3648961, at *3 (E.D. Cal. 2016) ("When determining whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply 'ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter.'") (quoting *First Options of Chicago, Inc.*, 514 U.S. at 944; citing *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002)).

Nevada law, in turn, familiarly requires a so-called "meeting of minds" as a condition precedent to the formation of a valid contract. *See, e.g.*, *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) ("Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration.") (citing *Keddie v. Beneficial Insurance, Inc.*, 580 P.2d 955, 956 (Nev. 1978) (Batjer, C.J., concurring)).

Normally, when a party seeks to create a binding contract through electronic means, the non-drafting party is required to affirmatively check a box indicating review and acquiescence to

the terms thereof, to click a specified link expressly indicating the same, or to affix an actual digital signature. *See, e.g.*, *Grosvenor v. Qwest Corp.*, 733 F.3d 990, 992–93 (10th Cir. 2013) ("Before completing installation of Quest's software, a customer is presented with a 'LEGAL AGREEMENTS' screen that advises him to read the terms of an agreement, 'including arbitration,' at a website address. The screen advises: 'Your click on 'I accept' is an electronic signature to the agreements and contracts set out herein.' A customer cannot install the software unless he clicks 'I accept.'"); *Stiener v. Apple Computer, Inc.*, 556 F. Supp. 2d 1016, 1018 (N.D. Cal. 2008) ("The first sentence displayed in the scrolling text box, advised the Stieners by checking the check box below, they would be 'bound' to 'the Terms of Service, including the binding arbitration clause.'"); *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 3 (1st Cir. 2012) (facts considering presentation of an agreement with language reading "you acknowledge that you have received a copy of the Arbitration Agreement and agree to its terms. Do not check the Accept box below until you have read this statement"); *Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1162 (D. Colo. 2019) ("Defendant asserts that Plaintiff manifested assent to the Terms of Use, and thus the arbitration agreement, by affirmatively 'check[ing] [the] box to indicate his agreement to the Terms of Use and Privacy Policy, and click[ing] 'See Job Matches.'"); *Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 6462089, at *2 (N.D. Cal. 2016) ("The arbitration agreement is presented as a 'standalone screen' titled 'Arbitration Agreement.' To 'electronically sign' the Agreement, the applicant must check the check box acknowledging 'I have read, understand and accept the terms of the Arbitration Agreement document' and click the 'Accept' button.") (internal citation omitted); *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 2011 WL 4074297, at *1 (D. Mass. 2011) ("Whenever Lisa Chung, or any other trip participant, made an online



payment, the website required the payee to check a box agreeing to the terms set forth in the Agreement.").

Here, the Plaintiffs were never asked to check a box, were never shown a screen containing the actual terms of the putative Agreement, were never asked to electronically sign the putative Agreement, and were never even made affirmatively aware of the Agreement itself until well after they commenced using the Defendant's apps (with Ms. Ball and Jane Roe becoming aware after all events at issue *sub judice* and Mr. Prignano becoming aware of the existence of the Agreement through an e-mail from the Defendant significantly after he experienced many of the harms complained of in the Complaint and in which the Defendant threatened to take his money if he did not acquiesce to the Agreement).

There is, thus, no meeting of the minds requisite to create a binding contract in this case. There is, rather, a contract the Defendant had drafted, which the Defendant wished to force upon its consumers, which the Defendant altogether neglected to actually present to those consumers in any legally valid fashion whatsoever. Or, stated otherwise, "what we've got here is failure to communicate." Cool Hand Luke, (1967).

This issue is ultimately dispositive; since the Plaintiffs never entered into the Agreement, the terms of the Agreement are immaterial and the Motion merits denial to the extent it endeavors to compel arbitration of the Plaintiffs' claims.

    **b.  The Agreement is Unenforceable**

        **i.  The Arbitration Clause of the Agreement is Unconscionable**

Even if the Plaintiffs are found to have entered into the Agreement, arbitration of the instant dispute would still be inappropriate since the terms of the arbitration clause are unconscionable. The circumstances surrounding the Agreement's putative execution are so one-

sided and overreaching as to be procedurally unconscionable, and the specific provisions of the Agreement – including a mandate that consumers pay for one half of a commercial arbitration while simultaneously forfeiting their rights to damages available under consumer protections laws – are substantively unconscionable. It is accordingly inappropriate to compel arbitration of this matter.

The Federal Arbitration Act contains an express savings clause permitting a challenge to be raised to the legality, *vel non*, of the arbitration agreement itself. 9 U.S.C. § 2. As noted by the Supreme Court, "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability…'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Perry v. Thomas*, 482 U.S. 483, 492–493, n. 9 (1987)). *See also*, *Epic Sys. Corp. v. Lewis*, – U.S. –, 138 S. Ct. 1612, 1622 (2018) ("The clause 'permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'") (citing *AT&T Mobility*, 563 U.S. at 339).

Whether or not an agreement to arbitrate is unconscionable is a question of state law. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir. 2001) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000); 9 U.S.C. § 2; quoting *Perry*, 482 U.S. at 492 n. 9; *Doctor's Assocs.*, 517 U.S. at 686).

Under Nevada law, there must be "both procedural and substantive unconscionability to invalidate a contract as unconscionable." *Raebel v. Tesla, Inc.*, – F. Supp. 3d –, 2020 WL 1659929, at *3 (D. Nev. 2020) (quoting *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (Nev. 2018)). In assessing such unconscionability, this Honorable Court has observed the existence of a so-called "sliding scale" between the two varieties of unconscionability:

An arbitration clause is procedurally unconscionable under Nevada law when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. Substantive unconscionability "focuses on the one-sidedness of the contract terms." The Nevada Supreme Court applies a sliding scale in evaluating whether both procedural and substantive unconscionability invalidate an arbitration clause. Less evidence of substantive unconscionability is required in cases involving great procedural unconscionability. The reverse is also true. Less evidence of procedural unconscionability is required in cases involving great substantive unconscionability.

*Simms v. Navient Sols., Inc*., 157 F. Supp. 3d 870, 877 (D. Nev. 2016) (quoting and citing *D.R. Horton v. Green*, 96 P.3d 1159, 1162-1163 (Nev. 2004); citing *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164, 1169 (Nev. 2010)).

An agreement is substantively unconscionable when it requires a party to "pay either unreasonable costs *or* any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997)) (emphasis in original). *See also*, *Green Tree Fin. Corp.-Alabama*, 531 U.S. at 90 ("It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum…"); *Am. Exp. Co. v. Italian Colors Rest*., 570 U.S. 228, 236 (2013) (approvingly citing and quoting the *Green Tree Fin. Corp.-Alabama* holding in a case distinguishing between fee-splitting provisions and clauses waiving rights to seek class action recourse); *Shankle v. B-G Maint. Mgmt. of Colorado, Inc*., 163 F.3d 1230, 1235 (10th Cir. 1999) ("The Agreement thus placed Mr. Shankle between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum. … Given this deficiency,



we conclude the Agreement is unenforceable under the Federal Arbitration Act.") (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991); *Cole*, 105 F.3d at 1484–85).

Here, the Agreement is necessarily substantively unconscionable under *Ting*, as it requires the Plaintiffs to pay one half of the costs associated with arbitration, including the fees of the arbitrator:

> Each party shall bear its own attorneys' fees, cost and disbursements arising out of the arbitration, and **shall pay an equal share of the fees and costs of the arbitrator and AAA**; however, the arbitrator may award to the prevailing party reimbursement of its reasonable attorneys' fees and costs (including, for example, expert witness fees and travel expenses), and/or the fees and costs of the arbitrator.

Agreement (as found appended to the Motion, at DE #23-5) at § 14.4 (emphasis added).

Since the Agreement prohibits the grouping of actions (Agreement at § 14.3), each of the Plaintiffs herein would have to pay, out of pocket, one half of the costs of an individual commercial arbitration – inclusive of one half of the fees of a commercial arbitrator. In an arbitration under the American Arbitration Association's Commercial Arbitration Rules (as provided for in Section 14.4 of the Agreement), one half of the costs of arbitration, inclusive of one half of the fees of an arbitrator, could easily exceed $30,000. *See* Declaration of Timothy C. Lynch, Esq., attached hereto as Exhibit D, at ¶¶ 9-11.

Under *Ting*, *Cole*, and their progeny, the ability of the Plaintiffs to pay for such fees and costs is immaterial; the clause is substantively unconscionable on its face by requiring the payment of *any* fees or costs. However, to whatever extent such might be construed as relevant, one of the Plaintiffs herein, Jane Roe, is an individual who has literally lost her life's savings and gone into debt on account of the actions for which she seeks recourse *sub judice*. None of the Plaintiffs have the ability to readily pay one half of the fees and costs of a commercial arbitration. *See* Roe Dec., Ex. B, at ¶ 4; Ball Dec., Ex. A, at ¶ 4; Prignano Dec., Ex. C, at ¶ 4.



With regard to procedural unconscionability, "A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Guerra v. Hertz Corp.*, 504 F. Supp. 2d 1014, 1021 (D. Nev. 2007).

Here, the Plaintiffs certainly had "unequal bargaining power" as the Agreement is a prototypical take-it-or-leave-it contract of adhesion. As discussed *supra*, the Plaintiffs did not even see the Agreement – much less understand its various provisions – at the time a link was presented to them in fine print, beneath a click-through button on a mobile app. But even if they had seen it, they would have had no way to negotiate its terms; their only option was to either click the button – thus putatively accepting the Agreement – or not click the button.

Moreover, the Agreement is a voluminous document, scribed in legalese, that would not be readily understandable by the Plaintiffs even if they had endeavored to locate it and read it. The provision calling for them to pay one half of an arbitrator's costs and expenses is buried 8,236 words into the Agreement and is neither bolded nor in all capital letters. *See* Agreement at § 14.4. Another provision, prohibiting an arbitrator from awarding punitive or special damages, comes 8,204 words into the Agreement and is also neither bolded nor in all capital letters. *Id.* Yet another provision, putatively limiting the Plaintiffs' maximum recovery in *any* action to $50.00, comes 7,436 words into the Agreement. *Id.* at § 13.

Moreover, at least on that last point, the Agreement is contradictory. On one hand, it purports to limit liability to $50.00 (which is, unto itself, a substantively unconscionable provision in the prism of a gambling site where consumers upload tens of thousands of dollars). *Id.* On the other hand, the Agreement later creates a different arbitration standard for disputes based on



whether or not the sum in controversy exceeds $10,000.00. *See* Agreement at § 14.4 ("In a Dispute involving $10,000 or less, any hearing will be telephonic unless the arbitrator finds good cause to hold an in-person hearing instead").

It is genuinely not clear how these two provisions can be legally reconciled. Moreover, it is simply not feasible to expect a consumer, with no bargaining power whatsoever, to (i) locate a link hidden beneath a click-through button; (ii) follow the link; (iii) read more than 8,000 words into a document of dense legalese (which is roughly one third the total length of The Old Man and the Sea);[4] (iv) understand these provisions; (v) reconcile contradictory provisions; (vi) make an informed decision about agreeing to these provisions; and (vii) endeavor to negotiate an Agreement that is *per se* non-negotiable. Rather, this is an exemplar of procedural unconscionability.

With both the arbitration clause itself, as well as the Agreement as a whole, being substantively and procedurally unconscionable, it is inappropriate to compel arbitration herein. This is the precise sort of scenario envisioned by the savings clause of Section 2 of the Federal Arbitration Act, and thusly one where it is proper – in the interests of substantive and procedural justice – for the instant case to remain before this Honorable Court.

### ii.  The Agreement is Unsupported by any Lawful Consideration

While arbitration clauses are ordinarily severable from contracts without regard to the legality, *vel non*, of the underlying agreement, the arbitration clause here ultimately cannot be severed because the specific nature of the illegality herein renders the clause wholly unsupported by any consideration whatsoever. Ms. Ball and Mr. Prignano have received no legally cognizable

---

[4] E. Hemingway, The Old Man and the Sea (1952).

benefit from the Defendant, and thus have been furnished no consideration in exchange for agreeing to arbitrate any disputes.[5] The arbitration clause is accordingly void unto itself.

Under Nevada law, "to create an enforceable contract there must be an offer, acceptance, meeting of the minds, and consideration." *Williams v. Univ. Med. Ctr. of S. Nevada*, 688 F. Supp. 2d 1134, 1141 (D. Nev. 2010) (citing *Mack v. Estate of Mack*, 206 P.3d 98, 108 (Nev. 2009)).

Illegal provisions of a contract cannot be severed, so as to save the legal portions of the contract, if the legal portions are not supported by independent and lawful consideration. *See, e.g.*, *Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 767 F.3d 912, 925 (9th Cir. 2014) ("Legal portions of contracts are severable from illegal portions where there is separate legal consideration attributable to the severed portion of the agreement.") (quoting *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1148 (9th Cir. 1986)); *Bart St. III v. ACC Enterprises, LLC*, 2018 WL 4682318, at *4 (D. Nev. 2018) ("The ability to sever only applies, however, when the illegal portions are 'collateral to the main transaction' and 'the language employed and the subject-matter of the contract' shows that severability will preserve the parties' intent in making the contract.") (citing *Vincent v. Santa Cruz*, 647 P.2d 379, 381 (Nev. 1982) (quoting *Golberg v. Sanglier*, 616 P.2d 1239 (Wash. Ct. App. 1980); *Linebarger v. Devine*, 214 P. 532, 534 (Nev. 1923); *Cox v. Station Casinos, LLC*, 2014 WL 3747605, at *4 (D. Nev. 2014)).

Here, the only consideration tendered to Ms. Ball and Mr. Prignano was the ability to play card games, for money, on the Defendant's platform. In fact, the Agreement is only presented

---

[5] Jane Roe does not join in this argument. While Jane Roe contends the Agreement is illegal under the laws of the State of Colorado, that legal scheme requires a factual inquiry to determine if a contest is considered gambling (and thusly prohibited) or a game of skill (and thusly allowable within various confines). *See* C.R.S. § 18-10-102(2)(a). By contrast, and as noted *infra*, the legal schemes of Nevada and Texas require no such factual inquiry.



(albeit in concealed form) to consumers when they endeavor to play wagered games for real money; the Agreement is not prompted to an individual who elects to simply play free games on the Defendant's apps. *See* Declaration of Lisa Costello, attached hereto as Exhibit E, at ¶ 3.

By putatively consenting to the terms of the Agreement, a consumer gains nothing more than the right to wager on card games on the Defendant's mobile phone apps. Yet such wagering activity is *per se* illegal under the laws of both Nevada and Texas. *See, e.g.*, NRS § 463.0152 ("'Game' or 'gambling game' means any game played with cards…"); NRS § 463.160 (rendering it "unlawful for any person… [t]o deal, operate, carry on, conduct, … or expose for play in the State of Nevada any gambling game… without having first procured… all federal, state, county and municipal gaming licenses or registrations"); NRS § 463.750 (requiring licensure of interactive gaming operators); Tex. Penal Code § 47.03(a)(3) (making it a crime to be "a custodian of anything of value bet or offered to be bet"); Tex. Penal Code § 47.05(a) (making it a crime to "knowingly communicate[] information as to bets").

The consideration given to Ms. Ball and Mr. Prignano – the Defendant's operation of an app-based casino – was thus illegal in nature. The Defendant gave no other consideration to Ms. Ball or Mr. Prignano; there are no other benefits provided to them under the Agreement, nor did they receive any lawful benefits through their participation in the Defendant's casino games.

In fact, the foregoing contractual provision requiring Ms. Ball and Mr. Prignano to pay one half of all arbitration costs and fees is of particular import here, as such means they do not even receive the traditional consideration of the non-consumer party paying the costs attendant to adjudication of a dispute. If the Defendant had followed the normative route and indicated it would pay all arbitration costs and expense, there would arguably be some sliver of consideration

in the arbitration clause itself; based on the fee-splitting construct, however, not even that normative allowance is present in this case.

There is accordingly no consideration remaining, in the Agreement, to support a one-sided arbitration clause that (i) requires Ms. Ball and Mr. Prignano to compensate a commercial arbitrator; (ii) calls for Ms. Ball and Mr. Prignano to forfeit their legal right to collect exemplary and punitive damages; (iii) requires Ms. Ball and Mr. Prignano to waive their constitutional right to a trial by jury; and (iv) otherwise generally disadvantages Ms. Ball and Mr. Prignano.

The Plaintiffs are aware of the Supreme Court's holding in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). That case contemplates "whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality." *Buckeye Check Cashing*, 546 U.S. at 442. The court there ultimately holds such a decision is one to be deferred to an arbitrator. *Id.*

Critically, though, the *Buckeye* Court considers illegality in the prism of a case where there is no question as to the validity of consideration being tendered to the consumer party. Specifically, in *Buckeye*, the Plaintiff "received cash in exchange for a personal check in the amount of the cash plus a finance charge." *Buckeye Check Cashing*, 546 U.S. at 442. *Buckeye* does not address the question of severability in the absence of consideration.

To extend *Buckeye* to a case where there is no lawful consideration would be to do potential harm to the notion of contracts as they have long existed in American jurisprudence, especially vis a vis the provision of consideration being elementally necessary to find a contract was formed. *Buckeye* even expressly notes the actual formation of an agreement is one for the court – not the arbitrator – to consider: "The issue of the contract's validity is different from the



OPPOSITION TO DEFENDANT SKILLZ INC.'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT - 16

issue whether any agreement between the alleged obligor and obligee was ever concluded." *Id.* at 444 n. 1.

Plainly, *Buckeye* considers a putatively usurious loan, but it is a case where there is no question as to the existence of an actual loan – something that generally understood to form legal consideration. Here, the generally-accepted legal consideration is missing.

A dissenting opinion – discussing concepts not disputed by the majority – in a case from the United States Court of Appeals for the Ninth Circuit speaks to the prohibitively slippery slope that would ensue from allowing recognition of any clause in a contract wholly devoid of legal consideration:

> Hornbook law is that a contract is illegal if it either has an illegal purpose or was based on an illegal consideration… A contract to commit murder does not become commercial activity because the hit man contracts with a payor for his services. An agreement as to the ransom between kidnappers and the parents of a kidnapped child does not become commercial activity because a contract for services is thereby entered into by the kidnappers.

*Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 880–81 (9th Cir. 2000), as amended on denial of reh'g and reh'g en banc (Aug. 17, 2000) (Noonan, J., dissenting) (citing Witkin, Summary of Cal. Law (9th ed. 1987) Contracts § 441; 6A Corbin on Contracts § 1378 (1993); *Letelier v. Republic of Chile*, 748 F.2d 790, 797 (2d Cir. 1984); *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 168 (D.C. Cir. 1994)).

To be sure, the Agreement in this case ought not be conflated with one for murder or the payment of a kidnapper's ransom – while the Plaintiffs certainly allege the Defendant to be inflicting harm through illegal operation, no actions of the Defendant rise anywhere near these extreme levels. But the principle expressed in the *Adler* dissent (a principle not disputed by the majority opinion therein) nonetheless holds true: the recognition of a contract – or any provision



thereof – being valid in the context of a wholly illegal construct is one that is repulsive to traditional legal norms.

As noted *supra*, case law makes clear state law is to be looked to in determining whether an arbitration clause is subject to a traditional contractual attack of unenforceability. *Ticknor*, 265 F.3d at 936–37. And it has long been well-settled that an illegal contract does not create any enforceable obligations in Nevada. *See, e.g.*, *Gaston v. Drake*, 14 Nev. 175, 181 (1879) ("It cannot be doubted at this day, nor is it denied, that a contract will not be enforced if it is against public policy, or that, if a part of the consideration of an entire contract is illegal as against public policy or sound morals, the whole contract is void.") (citing *Garforth v. Fearon*, 1 H. Bl. 327 (1787); *Powers v. Skinner*, 34 Vt. 281 (1861); Story's Eq. Jur. vol. 1, secs. 296, 298; *Carlton v. Whitcher*, 5 N. H. 198 (1830); *McCausland v. Ralston*, 12 Nev. 195 (1877)); *Drexler v. Tyrrell*, 15 Nev. 114, 131 (1880) ("Courts will not lend their aid to enforce illegal contracts or actions grounded upon immoral or illegal acts. Every act is unlawful which the law forbids to be done, and every contract is void which contravenes the law.") (citing Metcalf on Contracts; 1 Story on Contracts 566; 2 Chitty on Contracts 982, note t.); *Vincent*, 647 P.2d at 381 ("Generally, contracts made in contravention of the law do not create a right of action") (citing *Martinez v. Johnson*, 61 Nev. 125 (1941)); *Downs v. Napolitano*, 125 Nev. 1032 (2009) ("And, generally, a contract that is made in disobedience of the law creates no right of action to be enforced by a court.") (citing *Martinez*, 61 Nev. at 129).

Thus what Ms. Ball and Mr. Prignano urge here is that as a matter of Nevada's ordinary law governing the validity of contracts, the arbitration clause contained within the Agreement is not severable and, resultantly, not enforceable, because it is wholly devoid of any legal consideration. The *Buckeye* Court does not address a situation where there is no lawful

consideration whatsoever; it merely considers the scenario of a contract being potentially void on account of a usurious provision.[6]

Perhaps this argument is really just an extrapolation of the foregoing discussion of unconscionability: an agreement altogether devoid of legal consideration is almost, by definition, one that cannot be consciably enforced. Regardless of how framed, though, it is respectfully urged the arbitration clause in the Agreement not be construed in such a manner as to allow the operator of an illegal online casino to deprive its victims of their day in court.

### c. The Declaratory Judgment Counts are Necessary to Establish Illegality for Consumer Protection Purposes and to Overcome the Agreement if it is Otherwise Found to be Valid and Enforceable

The Defendant seeks dismissal of the declaratory judgment claims of the Plaintiffs seeking findings the Defendant is operating in an expressly illegal manner and the Agreement is accordingly void (Counts X and XI of the Complaint). Yet findings concerning the illegality of the Defendant's operations are necessary to establish violations of consumer protection laws premised upon illegal conduct and to assess the relative obligations of the parties herein to one another. These two counts thusly present justiciable controversies and are accordingly properly presented in this case.

### i. Standard

Under the Federal Declaratory Judgment Act, "In a case of actual controversy within its jurisdiction, … upon the filing of an appropriate pleading, [a court] may declare the rights and

---

[6] To the extent the *Buckeye* Court furnishes verbiage more sweeping than the facts before that court, it is urged the same is dicta. Further, especially inasmuch as the instant argument is one posed in the alternative – only coming into play if it is found (i) the Plaintiffs did enter into the Agreement; and (ii) the Agreement is not unconscionable – undersigned counsel respectfully asks this be viewed as a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" under Federal Rule of Civil Procedure 11(b)(2).

other legal relations of any interested party seeking such declaration, whether or not further relief

is or could be sought." 28 U.S.C. § 2801.

As the United States Court of Appeals for the Ninth Circuit has observed of the elements

requisite to adjudication of a claim for declaratory relief:

> A dispute is ripe in the constitutional sense if it "present[s] concrete legal issues,
> presented in actual cases, not abstractions." In the context of a declaratory judgment
> suit, the inquiry "depends upon 'whether the facts alleged, under all the
> circumstances, show that there is a substantial controversy, between parties having
> adverse legal interests, of sufficient immediacy and reality to warrant the issuance
> of a declaratory judgment.'"

*Montana Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (quoting

*Colwell v. HHS*, 558 F.3d 1112, 1123 (9th Cir. 2009); *United States v. Braren*, 338 F.3d 971, 975

(9th Cir. 2003) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

### ii.   Count X – Agreement Viability

Count X of the Complaint seeks a declaration the Agreement putatively governing the

Defendant's operation is void as against public policy. As discussed at greater length *supra*, this

appears to be an illegal contract, premised upon illegal consideration, to be afforded no legal

effect whatsoever. A declaration as to this issue will be needed to establish the viability of the

Defendant's various claims and defenses in this case, many of which it has made clear will rest

upon the Agreement itself.

Specifically, if the Defendant believes it was allowed to *sua sponte* impound more than

$300,000 from Ms. Ball and Mr. Prignano because they allegedly violated the Agreement, it will

be important to assess the legality – and resultant enforceability – of the Agreement itself.

Similarly, if the Defendant wishes to stand upon the portion of the Agreement claiming to limit



OPPOSITION TO DEFENDANT SKILLZ INC.'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT - 20

recovery herein to $50 per Plaintiff, it will, again, be necessary to establish the void nature of that putative Agreement.

Governing law holds that assessing whether or not a key contract is void is, in turn, a valid and useful exercise of the Federal Declaratory Judgment Act. *See, e.g.*, *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1057 (9th Cir. 2008) ("In this case, even a broad declaration that IKON's fraudulent conduct has rendered invalid all of its fraudulently procured contracts would be a declaration that is grounded in the particular facts of the controversy before the court, namely Newcal's allegedly tortious interference with all such current and prospective contracts. Furthermore, that declaration would meet the test that the district court announced. It would **'clarify or settle the legal relations in issue'** (i.e. IKON's legal right to recover from Newcal for tortious interference), and it would 'afford relief from the uncertainty faced by the parties' (i.e. both Newcal's and IKON's uncertainty as to the legal validity of IKON's tortious interference theory).") (emphasis added).

Here, applying the *Newcal* standard, declaring the Agreement void will "clarify or settle the legal relations in issue" by dictating the obligations, or lack thereof, of the parties to one another under the Agreement. This will include the putative waiver of a right to trial by jury, the putative limitation of damages, and the Defendant's ability to attempt to justify actions based upon alleged breaches of the Agreement.[7]

It is accordingly appropriate to allow Count X of the Complaint to proceed and to permit this Honorable Court to ultimately enter a declaration as to the validity, *vel non*, of the Agreement.

---

[7] For the avoidance of doubt, even if the Agreement is held to be valid, there are myriad reasons the Defendant would not be legally justified in taking the actions it did. However, by allowing an assessment of the core validity of the Agreement, these numerous – and oft-thorny – issues may not need to be reached.



### iii.   Count XI – Illegality

Ms. Ball and Jane Roe both seek relief, in counts of the Complaint for which dismissal is not sought, under their respective states' consumer protection laws. In Ms. Ball's case, that is inclusive of Section 598.0923 of the Nevada Revised Statutes, which renders it a deceptive trade practice to carry on a business without all required government licenses, and which also makes it a deceptive trade practice to carry on a business without disclosing material information to consumers. NRS § 598.0923. In Jane Roe's case, that includes a claim under Section 6-1-105(1)(z) of the Colorado Revised Statutes, which gives a consumer recourse where an entity fails to operate with all required government licenses, as well as a claim under Section 6-1-105(1)(u) of the same statutory scheme, which creates a cause of action where an entity fails to disclose material information to consumers. As discussed *supra*, all Plaintiffs also seek a declaration the Agreement is void, with much of the declaration being premised upon the core illegality of the Defendant and its operations.

Count XI of the Complaint seeks a declaration as to the legality, *vel non*, of the Defendant's operations. This necessarily comports with the foregoing consumer protection claims (the viability of which are not challenged in the Motion) and the declaratory relief sought in Count X, as establishing whether or not the Defendant's operation is in contravention of governing state and federal law will dictate (i) if the Defendant has obtained all appropriate licenses to carry on a gambling business; (ii) if the Defendant is failing to disclose material information (i.e., its own criminality) to the Plaintiffs; and (iii) if the Agreement is void as a matter of law.

These issues are presented in the prism of a separate count for a declaratory judgment for largely procedural reasons. The questions of legality and criminality will need to be addressed prior to adjudication of the consumer protection claims so that instructions to a jury may be



appropriately tailored, and so the scope of consumer protection claims to be given to a jury can be understood prior to deliberations.

The legal conclusions sought in Count XI are, partially but not fully, elemental parts of consumer protection claims pleaded elsewhere in the Complaint. While various consumer protection claims will proceed without regard to the legality of the Defendant's operations, some portions of those claims are idiosyncratically tied to a finding of illegality. This core issue has thus been extracted and presented in the form of an independent count, so as to facilitate adjudication of this central legal issue by this Honorable Court.

## IV.    Conclusion

The Defendant makes a number of arguments in its Motion. One thing it does not argue, however, is that its operations conform to the laws of the State of Nevada and/or the State of Texas. In a lengthy document that finds space to (counterfactually) accuse Ms. Ball and Mr. Prignano of cheating, the Defendant is unable to muster a legal argument that claims tied to its illegality should be dismissed based on underlying statutory schemes. And while this is by no means a binding position of the Defendant or a de facto admission of criminality, the absence of any suggestion of a legal defense to its operations is rather revealing.

Jane Roe has been victimized by an illegal gaming operator in the precise fashion gaming regulations are intended to prevent. Ms. Ball and Mr. Prignano have had their money stolen by an illegal gaming operator in a way that would never be permitted by the regulators of a lawful casino. These three victims thus come to this Honorable Court in search of recourse, and respectfully ask they be permitted to continue such pursuit on the merits of their case.

WHEREFORE, the Defendants respectfully pray the Motion be denied and for such other and further relief as may be just and proper.



Respectfully submitted,


/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on this 11th day of September, 2020, I have caused a true and accurate copy of the foregoing to be served on the following person via this Honorable Court's CM/ECF system:

E. Leif Reid, Esq.
Lewis Roca Rothgerber Christie LLP
One East Liberty Street, Suite 300
Reno, Nevada 89501-2128
lreid@lrrc.com
*Counsel for the Defendant*


/s/ Maurice B. VerStandig
Maurice B. VerStandig