Maurice VerStandig, Esq.
Nevada Bar No.: 15346
THE VERSTANDIG LAW FIRM, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: (301)444-4600
Facsimile: (301)444-4600
Email: mac@mbvesq.com
*Counsel for Ms. Ball, Mr. Prignano and Jane Roe*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| ALYSSA BALL,<br><br>JOHN PRIGNANO,<br><br>and<br><br>JANE ROE,<br><br>Plaintiffs,<br><br>v.<br><br>SKILLZ INC.,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Case No. 2:20-cv-888 -JAD-BNW |

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**





**TABLE OF CONTENTS**


I. Introduction ..... 1

II. Argument ..... 2

a. This Matter Should Not be Arbitrated ..... 2

b. The Injunction Sought is a Lawful Prior Restraint of Illegal Commercial Speech ..... 3

c. Jane Roe Has Standing to Seek an Injunction ..... 6

d. Jane Roe is Likely to Succeed on the Merits of Her Claim ..... 8

e. Jane Roe Meets the Other Criteria for Injunctive Relief ..... 9

f. In Light of Jane Roe's Likely Success on the Merits, a Bond Should be Minimal ..... 11

III. Conclusion ..... 12




# TABLE OF AUTHORITIES

**Cases**

*Aetna Insurance Co. v. Hellmuth, Obata, Kassabaum Inc*., 392 F.2d 472 (8th Cir. 1968) ........... 8

*Allstate Prop. & Cas. Ins. Co. v. Mirkia*, 2014 WL 2801310 (D. Nev. 2014) ............................. 8

*Am. Television & Communications Corp. v. Manning*, 651 P.2d 440 (Colo. App. 1982)............ 7

*Associated Indus. Contractors, Inc. v. Fleming Eng'g, Inc.*, 162 N.C. App. 405 (2004) ............. 8

*Belfiore v. Procter & Gamble Co*., 94 F. Supp. 3d 440 (E.D. N.Y. 2015) ................................... 6

*Bialer v. St. Mary's Hospital*, 427 P.2d 957 (Nev. 1967) ........................................................... 8

*Capitol Records v. Zahn*, 2007 WL 542816 (M.D. Tenn. 2007)................................................ 10

*Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980)............. 3, 4

*City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087 (S.D. Cal. 2012) ............................................ 10

*Clear Channel Outdoor Inc. v. City of L.A.*, 340 F.3d 810 (9th Cir.2003).................................. 4

*Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp*., 642 P.2d 1086 (Nev. 1982)........ 8

*Davis v. Mineta*, 302 F.3d 1104 (10th Cir. 2002)........................................................................ 11

*Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991 (E.D. N.Y. 2014) .......................... 6

*Dellums v. Smith*, 577 F.Supp. 1456 (N.D. Cal.1984)................................................................ 10

*Dish Network L.L.C. v. Ramirez*, 2016 WL 3092184 (N.D. Cal. 2016) ..................................... 11

*First 100, LLC v. Omni Fin., LLC*, 2016 WL 3511252 (D. Nev. 2016)..................................... 11

*Fort v. Co-operative Farmers' Exchange*, 256 P. 319 (Colo. 1927) ............................................ 7

*Friends of the Earth, Inc. v. Brinegar*, 518 F.2d 322 (9th Cir.1975).......................................... 11

*Harris v. Bd. of Supervisors*, 366 F.3d 754 (9th Cir. 2004)....................................................... 10

*Heber v. Portland Gold Mining Co*., 172 P. 12 (Colo. 1918)...................................................... 7



*Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072 (N.D. Cal. 2016) ........................................ 11

*Livewirecyber, Inc. v. Lee*, 2017 WL 5640525 (C.D. Cal. 2017) ............................................... 10

*M.R. v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012) ................................................................. 10

*Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898 (9th Cir. 2009) ............................. 4, 5

*Miller v. Carlson*, 768 F. Supp. 1341 (N.D. Cal. 1991) ............................................................ 10

*People of State of Cal. v. Tahoe Reg'l Planning Agency*, 775 F.2d 998 (9th Cir. 1985)............ 11

*Reflex Media, Inc. v. Endeavor Standard SDN. BHD.*, 2019 WL 6792792 (C.D. Cal. 2019) .... 10

*Triad Sys. Corp. v. Southeaster Exp. Co.*, 64 F.3d 1330 (9th Cir. 1995) ................................... 10

*Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748 (1976)........... 3

**Rules**

Federal Rule of Civil Procedure 65 ........................................................................................ 12

**Music**

Bob Dylan, *Subterranean Homesick Blues*, Bringing It All Back Home (Columbia Records 1965)............................................................................................ 8



Comes now Jane Roe ("Jane Roe" or the "Plaintiff"),[1] by and through undersigned counsel, and in reply to the opposition brief (the "Opposition," as found at DE #28) of Skillz Inc. ("Skillz" or the "Defendant") to Jane Roe's motion for entry of a preliminary injunction (the "Motion," as found at DE #21) states as follows:

**I. Introduction**

The Defendant dupes consumers into losing money in an unlicensed, unregulated online casino through a series of conscious-shocking advertisements portraying the Defendant's products as means for individuals – mostly women – to joyously make extra money in their spare time. Despite the wholly deceptive and outwardly dangerous nature of these advertisements, the Defendant urges it ought not be restrained from running them in the State of Colorado because (i) the emotional harms they cause Jane Roe are not properly cognizable; (ii) commercial speech should not be restrained even when deceptive; (iii) Jane Roe lacks standing since she has already lost her money in the casino; (iv) it would be costly for the Defendant to lose a revenue stream; (v) Jane Roe is not likely to succeed on her claim herein; and (vi) this case should be arbitrated. Alternatively, the Defendant urges Jane Roe be directed to post a $1.5 million bond.

As discussed at greater length *supra*, these arguments each fail on their own merits, with the coup de grâce being Defendant's suggestion someone it has already robbed of her life's savings be made to post a $1.5 million bond as a condition of receiving relief. This is a case in which Jane Roe is very much likely to succeed; deceptive commercial speech does not enjoy First Amendment protections; consumers do have standing to seek injunctive relief even when they

[1] Jane Roe has filed a motion to proceed under a fictitious name in this litigation (DE #10), which is presently under advisement. Jane Roe's real name is indicated on a certificate of interested parties filed under seal (DE #12) and has been shared with all parties herein through their respective counsel.





have already learned of the actionable nature of a company's advertisements; lost revenue is not a valid interest to be weighed against legal compliance; and this case cannot be arbitrated since Jane Roe does not have the $20,500 to $27,550 to pay an arbitrator under the Defendant's own terms of service.

For these reasons, the Motion should be granted. It is high time the Defendant stop inflicting harm upon Jane Roe and, by extension, stop perpetrating a fraud upon the people of the State of Colorado. This case concerns illegal gambling in its worst and most harmful form, as the facts herein demonstrate the pernicious impacts of an underworld operator cloaked in the threads of legitimacy procured through splashy advertisements run on reputable third party web and social media platforms. Enjoining that conduct is not merely the legally appropriate thing to do in the prism of Jane Roe's case; it is, too, an action that will benefit Colorado's citizenry at large.

## II. Argument

### a. This Matter Should Not be Arbitrated

As set forth in extensive detail in Jane Roe's opposition to the Defendant's motion to compel arbitration (DE #27), it is inappropriate to compel arbitration of this matter. Specifically, and without limitation, Jane Roe did not actually enter into the putative arbitration agreement (the "Agreement") and the Agreement is both substantively and procedurally unconscionable.

Jane Roe incorporates her topical briefing by reference and will refrain from reasserting the same arguments herein; the Defendant's motion to compel arbitration and Jane Roe's opposition thereto are dispositive of this issue and well speak for themselves. However, it bears notation that the Defendant's Agreement would mandate Jane Roe pay one half of all fees – including arbitrator's fees – if this matter were arbitrated, with such sum coming to between $20,500 and $27,550. DE #27-4 at ¶ 11. Jane Roe does not have that much money (DE #27-2 at



¶ 3); in fact, she brings this case because the Defendant has drained her of her life's savings and left her heavily in debt.

Referring this particular case to arbitration is not a means of alternative dispute resolution; under the Defendant's own Agreement and its unconscionable consumer fee splitting mechanism, referring this case to arbitration is a surefire means of ensuring Jane Roe be unable to proceed with the adjudication of her claims in any venue or tribunal.

**b. The Injunction Sought is a Lawful Prior Restraint of Illegal Commercial Speech**

While serious and core constitutional concerns necessarily surround any effort to restrict or restrain speech, the injunction sought *sub judice* does not offend any such values or standards as it is merely an injunction prohibiting illegal speech and thusly well beyond the protective ambit of the First Amendment. The Defendant's advertising is, patently and unapologetically, in the nature of commercial speech; the injunction sought is aimed solely at such advertising and, thusly, solely at the variety of commercial speech courts have routinely held restrainable when in contravention of governing law.

As the Supreme Court has had occasion to observe, "commercial speech is such a sturdy brand of expression that traditional prior restraint doctrine may not apply to it." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 571 n. 13 (1980) (citing *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771–772 n. 24 (1976)). *See also*, *Virginia State Bd. of Pharmacy*, 425 U.S. at 772 n. 24 ("Since advertising is the Sine qua non of commercial profits, there is little likelihood of its being chilled by proper regulation and forgone entirely").



The United States Court of Appeals for the Ninth Circuit has meticulously spelled out the Supreme Court's governing standard for the restraint of commercial speech within constitutional parameters:

> In *Central Hudson*, the Supreme Court announced a four-part test for assessing the constitutionality of a restriction on commercial speech: (1) if "the communication is neither misleading nor related to unlawful activity," then it merits First Amendment scrutiny as a threshold matter; in order for the restriction to withstand such scrutiny, (2) "[t]he State must assert a substantial interest to be achieved by restrictions on commercial speech;" (3) "the restriction must directly advance the state interest involved;" and (4) it must not be "more extensive than is necessary to serve that interest."

*Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 903 (9th Cir. 2009) (quoting *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 564-566; *Clear Channel Outdoor Inc. v. City of L.A.*, 340 F.3d 810, 815 (9th Cir.2003)).

Here, the communications are most certainly misleading – they are promotions for an online casino that suggest the unregulated gaming hub to be a locale where people can predictably make money on a reoccurring basis without any risk. These advertisements portray the Defendant's games as money-making opportunities for those looking to supplement their respective incomes, not wildly chancy casino games where the house's rake will erode even the luckiest player's funds at a degree of rapidity unknown to even the most bewildered of penny slot players.

Given this misleading characteristic, the Defendant's advertisements do not merit First Amendment protection under the *Metro Lights, L.L.C.* doctrine and the analysis need proceed no further. Deceptive trade speech is not protected as free speech and ought not be conflated with free speech for purposes of constitutional analysis. Yet even if the analysis were to proceed, the restraint sought herein is fitting and appropriate.





Specifically, the restriction imposed by the Colorado Consumer Protection Act serves a substantial and compelling interest. Jane Roe has suffered appreciable harm by the Defendant's illegal activities; enjoining those activities will serve to materially aid in her recovery process. A cessation of advertising will not unto itself spare Jane Roe the need to continue to seek treatment or attend support groups, nor will it abate all of the dark horrors that so often shoot through her mind. But a cessation of advertising will serve to minimize her exposure to so-called "triggers," and will do appreciable aid to her recovery process.

Moreover, while not central as Jane Roe is a private citizen and this is not a class action, it bears notation that enjoining advertising will do immense good for the people of Colorado. That the Defendant is apparently hooking so many new victims a day as to feign necessity of a $1.5 million bond (which is discussed *infra*) is conscious-shocking. An unlicensed, unregulated online casino is throwing the lives of Coloradans into turmoil on a seemingly-chronic basis; that the Defendant wishes to continue to profit from this illicit conduct does not nearly outweigh the substantial and compelling interest of the public at large.

Further, the injunction sought here will directly advance the interests at the core of the Colorado Consumer Protection Act and, by extension, those of Jane Roe raised in this case. The Defendant caused Jane Roe to become addicted to gambling and to suffer all the emotional trauma associated therewith; stopping the Defendant from flaunting its promiscuous illegality on Jane Roe's phone and computer, at all hours of day and night, will surely and meaningfully serve to begin mitigation of the appreciable damages caused by the Defendant's conduct.

Lastly amongst the *Metro Lights, L.L.C.* factors, the injunction sought here is solely confined to the State of Colorado, precisely so that it is not "more extensive than is necessary" to serve the aforementioned interests and so that it conforms to the statute under which suit is





brought. Jane Roe is not seeking a nationwide injunction, a prohibition on all speech of the Defendant, or even a cessation of the Defendant's illegal operations; she is merely asking the Defendant no longer be able to badger her continuously with its negatively impactful advertising.

**c. Jane Roe Has Standing to Seek an Injunction**

The Defendant asserts Jane Roe lacks standing to seek injunctive relief because (i) she will not again be harmed by the Defendant's illicit services; and (ii) she is not the Attorney General of Colorado. Both of these arguments fail as a matter of law, as Jane Roe's standing is well established by governing case law in the specific prism of consumer protection litigation.

As one federal court has observed while analyzing an analogous statute, "Public policy, as well as precedent, supports the rule that Article III standing exists to seek injunctive relief… 'Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would eviscerate the intent of the California legislature in creating consumer protection statutes.'" *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D. N.Y. 2015) (quoting *Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991, at *14 (E.D. N.Y. 2014)).

Indeed, if a consumer unlikely to again purchase a deceptively advertised product could not seek injunctive relief, then the provision of injunctive relief in non-governmental litigation would be a nullity as anyone savvy enough to sue will already be wise to the at-issue deception. Yet, even more to the point *sub judice*, Jane Roe's harm is not merely the risk of again playing the Defendant's games (which risk she acknowledges to be nearly non-existent) but, too, the appreciable harm being done to her by the at-issue advertising.

Critically, the harm done to Jane Roe has not yet abated. Yes, she has already lost all of her money, and gone heavily into debt, but to view those damages as the totality of her loss would be unduly myopic. Much of the harm done to Jane Roe herein is emotional and manifest in the





form of anguish, pain and suffering; the Defendant did not merely rob her – it did, too, cause her extraordinary perceptive embarrassment and emotional harm. These damages are amplified every time one of the Defendant's advertisements is paraded across the screen of Jane Roe's smartphone; she does not need to gamble in the Defendant's casino to again be harmed – her harm manifests in a broader and demonstrable fashion through her mere ongoing exposure to the Defendant's fantastical tales of work-from-home riches.

With regard to the provision of the Colorado Consumer Protection Act vesting authority to seek injunctive relief in governmental bodies, the same is not limiting of consumers' abilities to seek injunctive relief through ordinary means. Colorado's own case law makes clear that such a statutory allowance of governmental injunctive remedies is to be interpreted as being in addition to – and not in lieu of – those allowances available to the citizenry through ordinary legal means:

> Conversely, where rights or interests are entitled to protection under a tort, contract, or other common law principle, the passage of a statute providing penal protection for the same rights and interests will not, in the absence of clear legislative intent, bar a private suit to enjoin the wrongful conduct

*Am. Television & Communications Corp. v. Manning*, 651 P.2d 440, 447 (Colo. App. 1982) (citing *Fort v. Co-operative Farmers' Exchange*, 256 P. 319 (Colo. 1927); *Heber v. Portland Gold Mining Co*., 172 P. 12 (Colo. 1918)).

While Jane Roe has only sought relief under the Colorado Consumer Protection Act, her claims can easily be manifested as ones for negligent misrepresentation, fraud in the inducement, and other actions arising at common law. Under the *Am. Television & Communications Corp.* doctrine, the redundancy of her consumer claims to these common law claims does not serve to



cut off her entitlement to injunctive relief. And she thusly enjoys standing to pursue the relief sought in her Motion.[2]

**d. Jane Roe is Likely to Succeed on the Merits of Her Claim**

The Defendant urges Jane Roe needs expert testimony to establish the materiality of an advertising scheme's omission of all references to the subject product being a gambling interface, and the likely loss of monies through such interface. Opposition at 28:7-10. Remarkably, the Defendant makes this assertion even in the face of the advertising scheme promoting the casino product as a means for women to reliably make extra money. *See* Motion, *passim*.

It is altogether unclear just what the Defendant believes an expert is needed to establish in this context. The Motion sets out how the Defendant's apps are casino games, how the Defendant's rake swallows players' monies at an exponential rate, and how the Defendant's advertising scheme does not so much as mention the potential loss of money. These contentions are not scientific; they sound in common sense.

Under Nevada law, "where ... the service rendered does not involve esoteric knowledge or uncertainty that calls for the professional's judgment, it is not beyond the knowledge of the jury to determine the adequacy of the performance. This is the so-called 'common-knowledge' exception.'" *Allstate Prop. & Cas. Ins. Co. v. Mirkia*, 2014 WL 2801310, at *12 (D. Nev. 2014) (quoting *Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp*., 642 P.2d 1086, 1087 (Nev. 1982) (citing *Bialer v. St. Mary's Hospital*, 427 P.2d 957 (Nev. 1967)) (citing *Aetna*

[2] If Jane Roe needs to seek leave of court to amend her complaint and expressly plead these causes of action, she is prepared to do so. It does not, however, appear such is requisite to her seeking injunctive relief, and she would just as soon avoid making an already-lengthy pleading even longer, especially as a motion directed toward its dismissal nears finality of briefing.



VS VerStandig LAW FIRM

*Insurance Co. v. Hellmuth, Obata, Kassabaum Inc.*, 392 F.2d 472, 478 (8th Cir. 1968)); citing *Associated Indus. Contractors, Inc. v. Fleming Eng'g, Inc.*, 162 N.C. App. 405, 412 (2004)).

More succinctly, in the words of one Nobel laureate, “You don’t need a weather man to know which way the wind blows.” Bob Dylan, *Subterranean Homesick Blues*, Bringing It All Back Home (Columbia Records 1965).

Jane Roe does not need an expert to establish the materiality of omissions where a casino advertisement (i) does not mention the product is a gambling interface; (ii) does not mention the casino takes a nosebleed rake mathematically certain to devour players’ money; and (iii) affirmatively pitches the product as a way for women to make extra money in their spare time. This is the “common sense” of which Nevada speaks (especially in a state like Nevada where gambling is such an ingrained part of the public vernacular) and the simplistic weathervane to which Bob Dylan artfully alludes.

Moreover, the idea that Jane Roe has not been injured by being suckered into a casino based on deceptive advertisements is *reductio ad absurdum*. She has made clear she never would have engaged in the acts at issue *sub judice* had she known the Defendant was operating a gambling bazaar; that her compulsions caused her to hemorrhage monies once inside the unlicensed and unregulated casino is a necessary and direct byproduct of her being lured therein.

**e. Jane Roe Meets the Other Criteria for Injunctive Relief**

The Defendant asserts Jane Roe does not show irreparable harm because she would be triggered by *any* Skillz advertisement. This argument is expressly contemplated in the Motion, where it is noted that Skillz is welcome to introduce any lawful advertisement in response to the Motion, and that any future advertisements conforming to legal rigors would present new issues.



VerStandig LAW FIRM

*See* Motion at 18:21-19:2. Notably, the Defendant has not suggested any of its advertisements conform to governing law – it has merely insinuated it could create legal advertisements.

As noted in the Motion, "A plaintiff who seeks preliminary injunctive relief must show 'that irreparable injury is likely in the absence of an injunction.' She need not further show that the action sought to be enjoined is the exclusive cause of the injury." *M.R. v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012) (quoting *Winter*, 555 U.S. at 22; citing *Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004)).

Jane Roe has shown the Defendant's advertisements are one of the causes of her harm. If the Defendant wishes to commence producing lawful advertisements that do not offend Colorado law, those can – and ought to – be assessed when extant in nature. For the time being, this is a purely academic argument on the Defendant's part.

Similarly, the Defendant argues the balance of equities tip in its favor because of a "obviously deleterious impact on Skillz' revenues and its goodwill." Opposition at 18:11-12. Yet, injunctive relief requiring a party to adhere to the law is, by definition, not a cognizable hardship upon that party. *See, e.g.*, *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1113 (S.D. Cal. 2012) ("The third factor, the balance of hardships, is also satisfied. There is no harm to Shah since an injunction would merely require Shah to comply with the law.") (citing *Capitol Records v. Zahn*, 2007 WL 542816, at *4 (M.D. Tenn. 2007)); *Miller v. Carlson*, 768 F. Supp. 1341, 1343 (N.D. Cal. 1991) ("[I]irreparable injury" to a party being enjoined "is unlikely where the Court has merely ordered the defendants to comply with the law.") (citing *Dellums v. Smith*, 577 F.Supp. 1456, 1458 (N.D. Cal. 1984)); *Reflex Media, Inc. v. Endeavor Standard SDN. BHD.*, 2019 WL 6792792, at *4 (C.D. Cal. 2019) ("In considering the balance of hardships between the parties, Defendants would suffer no harm by being required to comply with existing law. Defendants are





likely to argue that they may lose money from its audience by having to change its website, but such argument would be unavailing.") (citing *Triad Sys. Corp. v. Southeaster Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995)); *Livewirecyber, Inc. v. Lee*, 2017 WL 5640525, at *3 (C.D. Cal. 2017) ("The public interest is served, and the balance of hardships tips sharply in a plaintiff's favor when a defendant is required to do no more than comply with the law.") (citing *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077-1078 (N.D. Cal. 2016); *Dish Network L.L.C. v. Ramirez*, 2016 WL 3092184, at *7 (N.D. Cal. 2016)).

With regard to the Defendant's arguments about public policy, which sound exclusively in First Amendment considerations, the same are discussed *supra* in connection with the prior restraint issues.

**f. In Light of Jane Roe's Likely Success on the Merits, a Bond Should be Minimal**

Jarringly, the Defendant argues Jane Roe be made to post a $1.5 million bond as collateral for an injunction. It is difficult to not treat this argument with a grain of cynicism, given that this case concerns Jane Roe's loss of her life's savings to the Defendant; if she had the money to post a $1.5 million bond, she almost certainly would not be suing the Defendant.

Fortunately, case law makes clear a consumer likely to succeed on the merits of her/his claim need only post "a minimal bond or no bond at all." *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1326 (9th Cir.), amended, 775 F.2d 998 (9th Cir. 1985) (citing *Friends of the Earth, Inc. v. Brinegar*, 518 F.2d 322, 323 (9th Cir.1975)). *See also*, *First 100, LLC v. Omni Fin., LLC*, 2016 WL 3511252, at *3 (D. Nev. 2016) ("A strong likelihood of success on the merits can 'tip[ ] in favor of a minimal bond or no bond at all.'") (quoting *People of State of Cal.*, 766 F.2d at 1326; *Davis v. Mineta*, 302 F.3d 1104, 1126 (10th



Cir. 2002) ("Ordinarily, where a party is seeking to vindicate the public interest served by NEPA, a minimal bond amount should be considered.") (citing *Friends of the Earth, Inc.*, 518 F.2d at 322–23).

As discussed *supra* and at appreciably greater length in the Motion itself, Jane Roe is likely to succeed on the merits of her case herein. She is a consumer who has been painfully victimized by the predatory and illegal advertising scheme of an unlicensed, unregulated online casino; the Colorado Consumer Protection Act is aimed at protecting people precisely like her when they find themselves in situations precisely like hers. It is thus appropriate to order "a minimal bond or no bond at all," and the $500 suggested in the Motion – with leave for Jane Roe's counsel to post the funds out of the accounts of his firm – would ably meet this rigor.

## III. Conclusion

WHEREFORE, Jane Roe respectfully prays this Honorable Court (i) preliminarily enjoin the Defendant from advertising in the State of Colorado; (ii) direct her to post security in the amount of Five Hundred Dollars and No Cents ($500.00) pursuant to Federal Rule of Civil Procedure 65(c); (iii) permit her counsel of record herein to provide the foregoing security from the funds of his law firm; and (iv) afford such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on this 25th day of September, 2020, I have caused a true and accurate copy of the foregoing to be served on the following person via this Honorable Court's CM/ECF system:

E. Leif Reid, Esq.
Lewis Roca Rothgerber Christie LLP
One East Liberty Street, Suite 300
Reno, Nevada 89501-2128
lreid@lrrc.com
*Counsel for the Defendant*

/s/ Maurice B. VerStandig
Maurice B. VerStandig



VS VerStandig LAW FIRM