1  E. LEIF REID, Bar No. 5750
   LEWIS ROCA ROTHGERBER CHRISTIE LLP
2  One East Liberty Street, Suite 300
   Reno, Nevada 89501-2128
3  Tel: 775.823.2900
   Fax: 775.823.2929
4  lreid@lrrc.com

5  Attorneys for Defendant Skillz Inc.

6

7

8                    UNITED STATES DISTRICT COURT

9                        DISTRICT OF NEVADA

10  ALYSSA BALL,                          | CASE No. 2:20-cv-00888-JAD-BNW

11  JOHN PRIGNANO,

12                    and                 | **DEFENDANT SKILLZ INC.'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

13  JANE ROE,

14                Plaintiffs,

15          vs.

16

17  SKILLZ INC.,

18                Defendant.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................. 1

I.       PLAINTIFFS ENTERED INTO A VALID ARBITRATION AGREEMENT .................. 1

II.      THE ARBITRATION AGREEMENT IS ENFORCEABLE ............................................. 3

         A.      The Arbitration Clause Is Not Unconscionable ...................................... 3

                 1.       Procedural Unconscionability ........................................................ 3

                 2.       Substantive Unconscionability ...................................................... 5

         B.      Plaintiffs' Lack Of Consideration Argument Is Not Cognizable And Wrong .......... 8

III.     COUNTS X AND XI MUST BE DISMISSED FOR LACK OF ARTICLE III
         AND STATUTORY STANDING ....................................................................... 10

CONCLUSION ......................................................................................................... 12

DEFENDANT SKILLZ INC.'S REPLY ISO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Buckeye Check Cashing, Inc., v. Cardegna*,
    546 U.S. 440 (2006) .................................................................................................. 8, 9

5

*Circuit City Stores, Inc. v. Najd*,
    294 F.3d 1104 (9th Cir. 2002) ...................................................................................... 10

6

*Cole v. Burns Int'l Sec. Servs.*,
    105 F.3d 1465 (D.C. Cir. 1997) ...................................................................................... 6

7

*Cox v. Station Casinos, LLC*,
    No. 2:14-CV-638-JCM-VCF, 2014 WL 3747605 (D. Nev. June 25, 2014) ...................... 8

8

*EZ Pawn Corp. v. Mancias*,
    934 S.W.2d 87 (Tex. 1996)........................................................................................ 2, 3

9

*Fleetwood Enterprises, Inc. v. Gaskamp*,
    280 F.3d 1069 (5th Cir. 2002) ........................................................................................ 4

10

*Frudden v. Pilling*,
    842 F. Supp. 2d 1265 (D. Nev. 2012) ............................................................................ 11

11

*Gove v. Career Sys. Dev. Corp.*,
    689 F.3d 1 (1st Cir. 2012)................................................................................................ 2

12

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000) .................................................................................................... 6, 7

13

*Grosvenor v. Qwest Corp.*,
    733 F.3d 990 (10th Cir. 2013) ........................................................................................ 2

14

*Guerra v. Hertz Corp.*,
    504 F. Supp. 2d 1014 (D. Nev. 2007) .............................................................................. 3

15

*Hafer v. Vanderbilt Mortg. & Finance, Inc.*,
    793 F. Supp. 2d 987 (S.D. Tex. 2011)........................................................................ 3, 4

16

*Henderson v. Watson*,
    131 Nev. 1290 (2015)...................................................................................................... 3

17

*HomeAdvisor, Inc. v. Waddell*,
    No. 05-19-00669-CV, 2020 WL 2988565 (Tex. App. June 4, 2020) ............................ 4, 5

18

*In re Green Tree Servicing LLC*,
    275 S.W.3d 592 (Tex. App. 2008) ................................................................................... 3

19

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
    363 F.3d 1010 (9th Cir. 2004) ......................................................................................... 7

20

*Mackall v. Healthsource Glob. Staffing, Inc.*,
    No. 16-CV-03810-WHO, 2016 WL 6462089 (N.D. Cal. Nov. 1, 2016) ............................ 2

21

*Marshall v. Rogers*,
    No. 218CV00078JADCWH, 2018 WL 2370700 (D. Nev. May 24, 2018) ................... 3, 4

22

*N. Cty. Commc'ns Corp. v. California Catalog & Tech.*,
    594 F.3d 1149 (9th Cir. 2010) ....................................................................................... 10

23

*Nationwide Mut. Ins. Co. v. Liberatore*,
    408 F.3d 1158 (9th Cir. 2005) ....................................................................................... 10

24

25

26

27

28

DEFENDANT SKILLZ INC.'S REPLY ISO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ........................................................................ 11

*Oahn Nguyen Chung v. StudentCity.com, Inc.*,
    No. CIV.A. 10-10943-RWZ, 2011 WL 4074297 (D. Mass. Sept. 9, 2011)...................... 2

*Petrie v. GoSmith, Inc.*,
    360 F. Supp. 3d 1159 (D. Colo. 2019) ...................................................... 2, 5

*Raebel v. Tesla, Inc.*,
    No. 3:19-cv-00742-MMD-WGC, 2020 WL 1659929 (D. Nev. Apr. 3, 2020) ........2, 4, 5, 9

*Rousset v. ATT Inc.*,
    No. A-14-CV-0843-LY-ML, 2015 WL 9473821 (W.D. Tex. Feb. 29, 2016) ................... 4

*Rupracht v. Union Sec. Ins. Co.*,
    No. 307CV00231BESRAM, 2007 WL 9700737 (D. Nev. Dec. 20, 2007)........................ 9

*Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*,
    163 F.3d 1230 (10th Cir. 1999)................................................................. 6

*Stiener v. Apple Computer, Inc.*,
    556 F. Supp. 2d 1016 (N.D. Cal. 2008)....................................................... 2

*Shydler v. Shydler*,
    114 Nev. 192, 200 (1998) ...................................................................... 9

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*,
    925 F.2d 1136 (9th Cir. 1991) ................................................................. 9

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ................................................................. 6

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
    857 F. Supp. 2d 1135 (D. Colo. 2012) ..................................................... 2, 3

*Weller v. HSBC Mortg. Services, Inc.*,
    971 F. Supp. 2d 1072 (D. Colo. 2013) ..................................................... 3, 4

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017) .............................................................. 4

*Zambrano v. Strategic Delivery Sols., LLC*,
    No. 15 CIV. 8410(ER), 2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016)............................ 8

**Statutory Authorities**

28 U.S.C. § 2201..................................................................................... 10, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

Skillz Inc. ("Skillz") respectfully submits this reply memorandum of law in further support of its motion to dismiss the First Amended Complaint (the "FAC") as having been filed in violation of the parties' arbitration agreement or, in the alternative, to dismiss Counts X and XI, as to which Plaintiffs lack constitutional or statutory standing.

## <u>ARGUMENT</u>

## I.    PLAINTIFFS ENTERED INTO A VALID ARBITRATION AGREEMENT

Plaintiffs argue that they are not bound to arbitrate their claims because they never agreed to Skillz' Terms of Service.  In support, they claim they "never viewed the Agreement . . . , were never shown the Agreement . . . , were never asked to check any box acknowledging the Agreement, were never made to sign any acknowledgment of the Agreement, or, in the cases of Ms. Ball and Jane Roe – even so much as put on actual notice of the Agreement."  Opp. at 6.

All of this is unavailing, as Plaintiffs do not, because they cannot, dispute that each of them was timely notified of and accepted Skillz' Terms of Service.[1]  As detailed in Skillz' opening memorandum, prior to commencing the gaming from which their claims arise, each Plaintiff saved their Skillz account by clicking a "NEXT" button that was directly above a hyperlink stating, "By tapping 'Next', I agree to the Terms of Service and the Privacy Policy."  The hyperlink, when clicked, brought the user to the Terms of Service and Privacy Policy.  Plaintiffs admit all of this, and they do not even mention, much less try to distinguish, the myriad cases cited by Skillz to show that agreements formed in this manner—*i.e.*, through a user taking an action in an app or website expressly conditioned on his or her assent to terms made electronically available for review—are valid and enforceable under Nevada, Texas, and Colorado law.  Mot. at 10-12.

Ignoring these authorities, Plaintiffs invoke a supposed rule providing that "when a party seeks to create a binding contract through electronic means, the non-drafting party is required to

---

[1]  In the case of Plaintiffs Ball and Prignano, the claim that they lacked actual notice of the Terms of Service is also disproven by their own conduct, as both of them acknowledged familiarity with Skillz' Terms of Service during the events described in the First Amended Complaint.  *See* Mot at 6-7.

DEFENDANT SKILLZ INC.'S REPLY ISO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

affirmatively check a box indicating review and acquiescence to the terms thereof, to click a specified link expressly indicating the same, or to affix an actual digital signature." Opp. at 6-7.  It is not clear that this supposed rule requires anything different than what occurred in this case, in which Plaintiffs each affirmatively clicked a box positioned immediately above a hyperlink to the Terms of Service stating that, by clicking, they assented to the Terms of Service.  To the extent Plaintiffs are suggesting something more than that is required, such as requiring a user to view the terms of the agreement or certify that s/he has read them, none of the cited authorities support that position.  The only one even in the right ballpark is *Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159 (D. Colo. 2019), a Colorado case in which the court upheld an arbitration agreement where the plaintiff had agreed to arbitration by clicking a box next to an advisory that said, "I have read and agree to the terms & privacy policy." *Id.* at 1162.  However, the court did not hold that the user's certification to having read the terms he agreed to was required for an arbitration agreement to be formed.  To the contrary, the court cited the rule Skillz relies on here, noting, "[w]ith respect to internet arbitration agreements, courts 'routinely' uphold such agreements provided the user had 'reasonable notice, either actual *or constructive*, of the terms of the putative agreement and . . . manifested asset[*sic*] to those terms.'" *Id.* at 1161 (emphasis added) (quoting *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012)).[2]  Nevada and Texas follow the same rule, and thus uphold electronic arbitration agreements where the user assents to the terms and being afforded a meaningful opportunity to review them, regardless of whether he or she actually does so (or attests to doing so).  *See Raebel v. Tesla, Inc.*, No. 3:19-cv-00742-MMD-WGC, 2020 WL 1659929, at *3-4 (D. Nev. Apr. 3, 2020) (upholding arbitration agreement where plaintiff had a meaningful opportunity to review the terms before clicking to accept them); *EZ*

---

[2]  As to Plaintiffs' remaining cases on this point, in four of them, the court was not asked to rule on whether an arbitration agreement had been made and did not do so.  *See Grosvenor v. Qwest Corp.*, 733 F.3d 990 (10th Cir. 2013); *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1 (1st Cir. 2012); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 6462089 (N.D. Cal. Nov. 1, 2016); *Stiener v. Apple Computer, Inc.*, 556 F. Supp. 2d 1016 (N.D. Cal. 2008).  In the fifth, the court found an arbitration agreement had been created where the Plaintiff clicked a box to certify her acceptance to the terms of an agreement that was not set forth or linked on the page containing the box.  *See Oahn Nguyen Chung v. StudentCity.com, Inc.*, No. CIV.A. 10-10943-RWZ, 2011 WL 4074297 (D. Mass. Sept. 9, 2011).

-2-                Case No.   2:20-cv-00888-JAD-BNW
DEFENDANT SKILLZ INC.'S REPLY ISO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

1  *Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) ("Gonzalez' failure to read the agreement

2  does not excuse him from arbitration.  We presume a party, like Gonzalez, who has the

3  opportunity to read an arbitration agreement and signs it, knows its contents.").  Indeed, this Court

4  recently found a valid agreement to arbitrate where a user assented to Airbnb's terms of service,

5  which were readily accessible via the hyperlink in the sign-up screen, by clicking the "sign up"

6  button.  *See Marshall v. Rogers*, No. 218CV00078JADCWH, 2018 WL 2370700, at *3 (D. Nev.

7  May 24, 2018).

8       Plaintiffs' claim that they did not agree to arbitration, therefore, fails.

9  **II.     THE ARBITRATION AGREEMENT IS ENFORCEABLE**

10       The Plaintiffs argue that, even if they did agree to arbitration, the agreement is

11  unenforceable because it is unconscionable and not supported by valid consideration.  They are

12  wrong on both counts.

13       **A.     The Arbitration Clause Is Not Unconscionable**

14       A party seeking to void an arbitration agreement as unconscionable must prove both

15  procedural and substantive unconscionability.  *See Henderson v. Watson*, 131 Nev. 1290 (2015) (a

16  finding of unconscionability requires both procedural and substantive unconscionability); *Vernon*,

17  857 F. Supp. 2d at 1157 ("Colorado law similarly holds that both procedural and substantive

18  unconscionability are required for a contract to be unenforceable."); *In re Green Tree Servicing*

19  *LLC*, 275 S.W.3d 592, 603 (Tex. App. 2008) ("The party asserting unconscionability bears the

20  burden of proving both procedural and substantive unconscionability.").  Here, Plaintiff can show

21  neither.

22       **1.     Procedural Unconscionability**

23       Procedural unconscionability exists where a party lacks a meaningful opportunity to agree

24  to terms of a contract, either because the terms are forced on the party or because the party is

25  unfairly surprised with them.  *See Guerra v. Hertz Corp.*, 504 F. Supp. 2d 1014, 1021 (D. Nev.

26  2007); *Weller v. HSBC Mortg. Services, Inc.*, 971 F. Supp. 2d 1072, 1079-80 (D. Colo. 2013).

27  Under Texas law the standard is especially stringent: ''the only cases . . . in which an agreement

28  was found procedurally unconscionable involve situations in which one of the parties appears to

DEFENDANT SKILLZ INC.'S REPLY ISO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

1   have been incapable of understanding the agreement." *Hafer v. Vanderbilt Mortg. & Finance,*

2   *Inc.*, 793 F. Supp. 2d 987, 1003 (S.D. Tex. 2011) (*quoting Fleetwood Enterprises, Inc. v.*

3   *Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002)).

4          Plaintiffs argue for procedural unconscionability on the grounds that Skillz' Terms of

5   Service are a non-negotiable contract of adhesion.  However, the mere fact that a contract is non-

6   negotiable does not create procedural unconscionability where a party retains a meaningful choice

7   as to whether to sign it.  As one Texas federal court explained:

8          The fact that an arbitration agreement is included in a contract of adhesion renders
           the agreement procedurally unconscionable only where the stronger party's terms
9          are unnegotiable ***and*** the weaker party is prevented by market facts, timing or
           other pressures from being able to contract with another party on more favorable
10         terms or to refrain from contracting at all.

11  *Rousset v. ATT Inc.*, No. A-14-CV-0843-LY-ML, 2015 WL 9473821, at *7 (W.D. Tex. Feb. 29,

12  2016); *see also Weller*, 971 F. Supp. 2d at 1081 ("Even considered as contracts of adhesion, they

13  are not per se unconscionable for that reason.  Indeed, nothing in the record suggests that

14  Mr. Weller was compelled to refinance his home with HSBC at all.") (internal citation omitted).

15  Here, of course, Skillz was not selling an essential good such as electricity or internet service.

16  Skillz was offering access to its gaming platform, and if Plaintiffs did not like the terms on which

17  that access was offered, they were entirely free to reject them and seek entertainment elsewhere.

18  No Plaintiff has claimed otherwise.

19         Plaintiffs also suggest that the arbitration agreement was procedurally unconscionable

20  because it was not readily accessible to them (being available through a link) or readily

21  understandable.  As to the first of these, cases discussed above and numerous others clearly

22  establish that a party given notice and opportunity to review an agreement through a hyperlink is

23  afforded meaningful and adequate access to the agreement.  *See, e.g.*, *Wiseley v. Amazon.com, Inc.*,

24  709 F. App'x 862, 864 (9th Cir. 2017) (finding no procedural unconscionability when the

25  hyperlink was "in sufficient proximity to give [the plaintiff] a 'reasonable opportunity to

26  understand' that he would be bound by additional terms"); *Marshall*, 2018 WL 2370700, at *3;

27  *Raebel*, 2020 WL 1659929, at *4; *HomeAdvisor, Inc. v. Waddell*, No. 05-19-00669-CV, 2020 WL

28  2988565, at *4 (Tex. App. June 4, 2020) (hyperlink placed directly beneath the actionable button is

**DEFENDANT SKILLZ INC.'S REPLY ISO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS**

sufficiently conspicuous to give users a reasonable notice); *Petrie*, 360 F. Supp. 3d at 1162 (D. Colo. 2019) (finding hyperlink to the Terms of Use, which was embedded in the acknowledgement text next to the actionable button, was sufficient to put plaintiffs on reasonable notice).

As to the suggestion that the arbitration agreement was opaque, Plaintiffs cannot seriously claim to have been confused by the Terms of Service or unable to understand them, because they say they never so much as looked at them.  Opp. at 12.  That aside, any claim that the Terms of Service's arbitration provisions were not clear is demonstrably false.  The very first term of Skillz' Terms of Service, on the first page of the document, is an all capital letters advisory to users notifying them of the document's arbitration provision and advising them to read it carefully:

> 1.1 ARBITRATION. TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW, ANY CLAIM, DISPUTE OR CONTROVERSY OF WHATEVER NATURE ("CLAIM") ARISING OUT OF OR RELATING TO THESE TERMS AND/OR OUR SOFTWARE OR SERVICES MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION IN ACCORDANCE WITH THE PROCESS DESCRIBED IN SECTION 14 BELOW. PLEASE READ SECTION 14 CAREFULLY. To the maximum extent permitted under applicable law, you are giving up the right to litigate (or participate in as a party or class member) all disputes in court before a judge or jury.

Kaplan Decl., Ex. 3 at 1 (emphasis in original).  Section 14 of the Terms of Service, the detailed arbitration provision, is written in plain English, without legalese, and in the same standard font and type size as the rest of the document.  *See id.* at 15-17.  To require more than that would contravene the Federal Arbitration Act by disfavoring arbitration agreements vis-à-vis other types of contracts.  *See Raebel*, 2020 WL 1659929, at *4 ("Requiring an arbitration clause to be more conspicuous than other contract provisions . . . is exactly the type of law the Supreme Court has held the FAA preempts because it imposes stricter requirements on arbitration agreements than other contracts generally.").

### 2. Substantive Unconscionability

Because Plaintiffs are unable to demonstrate procedural unconscionability, the question of substantive unconscionability is moot.  *See supra* at p.3.  Even were that not the case, Plaintiffs could not establish substantive unconscionability.

1    Plaintiffs contend that the arbitration clause at issue is substantively unconscionable

2  because it requires Plaintiffs to pay half of the costs and fees associated with the arbitration.  There

3  are at least four separate reasons why this argument fails.

4    *First*, the cases Plaintiffs cite on this point all hold only that an arbitration clause may not

5  undermine federal statutory rights and burden the exercise of such rights by simultaneously

6  compelling a party to exercise such rights in arbitration and making it prohibitively expensive to

7  do so.  *See Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003); *Shankle v. B-G Maint. Mgmt. of*

8  *Colorado, Inc.*, 163 F.3d 1230, 1234-35 (10th Cir. 1999); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d

9  1465, 1484 (D.C. Cir. 1997).  Here, there are no federal statutory rights at play.  Plaintiffs

10  authorities are distinguishable on that basis, and they cite no others holding that a fee-splitting

11  provision renders an agreement to arbitrate unconscionable under Nevada, Texas or Colorado law.

12    *Second*, Plaintiffs have failed to demonstrate that being required to pay half the fees and

13  costs associated with arbitration would preclude them from pursuing their claims.  Despite bearing

14  the burden to establish unconscionability, *see Green Tree Fin. Corp.-Alabama v. Randolph*, 531

15  U.S. 79, 92 (2000) ("[A] party seeks to invalidate an arbitration agreement on the ground that

16  arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood

17  of incurring such costs."), each Plaintiff does nothing more than provide a one-sentence,

18  conclusory assertion that they are unable to pay half of the fees and costs.  *See* Declaration of

19  Alyssa Ball ¶ 4; Declaration of John Prignano ¶ 4; Declaration of Jane Roe ¶ 4.  None of them

20  provides any detail that would support this assertion or allow it to be tested.  Their showings are

21  therefore insufficient to carry their burden, especially when the allegations of their complaint

22  suggest that at least two of Plaintiffs have substantial resources.  Ball alleges that she lost $50,000

23  when she began playing 21 Blitz but nonetheless was able to keep playing and become a profitable

24  player, wagering hundreds of dollars on each game.  FAC ¶¶ 37, 38.  She further alleges that she

25  had the resources to lose $650,000 playing the game and that she has a balance of $28,000 in her

26  Skillz account.  *Id.* ¶¶ 43, 55.  Prignano similarly alleges that he initially lost $5,000 to $7,000

27  playing 21 Blitz but had the resources to continue until he became a profitable player, wagering

28  hundreds of dollars on each game.  *Id.* ¶ 60.  He claims to have lost $950,000 playing 21 Blitz and

DEFENDANT SKILLZ INC.'S REPLY ISO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

1  to have had the resources to lose an additional $350,000 after that, and he alleges that he holds

2  $286,000 in his Skillz account. *Id.* ¶¶ 67, 70, 71, 74.  A naked assertion of hardship should not be

3  accepted in view of these allegations.

4       The declaration of Timothy C. Lynch ("Lynch Decl.") is likewise not credible as it

5  provides nothing beyond speculation and assumptions.  Purportedly "[b]ased on [his] knowledge"

6  and his "experience as a commercial litigator" (Lynch Decl., ¶¶ 9, 13), Lynch makes a series of

7  predictions about the AAA filing fees and the overall arbitration costs.  *See id.* ¶¶ 9-11.  However,

8  none of it is rooted in anything concrete.  Lynch cites to no authority or documents issued by the

9  AAA, provides no algorithms of how the numbers are calculated, presents no comparable cases,

10  and refers to no data compilation of the average arbitration costs for similarly situated parties.  To

11  the contrary, he expressly admits that the numbers are just assumptions.  *See id.* ¶ 10 ("[T]he ***likely***

12  arbitrator fees . . . based on the ***assumptions*** I have made . . . .") (emphasis added).  Lynch is not

13  tendered as an expert on arbitration costs.  Thus, his personal unfounded assumptions are nothing

14  beyond speculation and cannot carry Plaintiffs' burden.  *See Green Tree Fin Corp.*, 531 U.S. at 90

15  n.6 (requiring a party challenging the fee-splitting provision to make concrete "factual

16  showings"—"speculative" risks, "unfounded assumptions," and "unsupported statements" cannot

17  suffice).

18       ***Third***, even if it were the case that Plaintiffs were financially unable to split the fees and

19  costs of arbitration, the AAA Commercial Rules include several provisions that give the

20  arbitrators broad discretion and flexibility to accommodate financial hardship by reducing,

21  deferring, or re-apportioning fees and costs.  *See* AAA Commercial Rule 47 ("The arbitrator may

22  apportion such fees, expenses, and compensation among the parties in such amounts as the

23  arbitrator determines is appropriate."); *id.* at Rule 53 ("The AAA may, in the event of extreme

24  hardship on the part of any party, defer or reduce the administrative fees."); *id.* at Rule 54 ("All

25  other expenses of the arbitration . . . shall be borne equally by the parties . . . unless the arbitrator

26  in the award assesses such expenses or any part thereof against any specified party or parties.");

27  *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1013 (9th Cir. 2004)

28  ("[T]he AAA rules allow the arbitrators to adjust the payment of costs in light of circumstances.").

In light of such provisions, Plaintiffs cannot establish that the fee-splitting provision will prevent them from vindicating their rights and is, therefore, substantively unconscionable. *See Zambrano v. Strategic Delivery Sols., LLC*, No. 15 CIV. 8410 (ER), 2016 WL 5339552, at *7-8 (S.D.N.Y. Sept. 22, 2016); *Cox v. Station Casinos, LLC*, No. 2:14-CV-638-JCM-VCF, 2014 WL 3747605, at *5-6 (D. Nev. June 25, 2014).

*Fourth*, even if it were the case that the provision of the arbitration agreement requiring Plaintiffs to share fees and costs were substantively unconscionable, Section 15 of the Terms of Service provides that if "any provision of these Terms shall be held invalid or unenforceable in whole or in part by any court of competent jurisdiction, such provision shall . . . be ineffective to the extent of such determination of invalidity or unenforceability . . . without affecting the remaining provisions of the Terms, which shall continue to be in full force and effect."  Kaplan Decl., Ex. 3 at 18.  Accordingly, the appropriate remedy in the event the fees-splitting provision were to be deemed unconscionable would be to sever and invalidate that provision, which is at best collateral to the arbitration agreement, and enforce the remainder of the arbitration agreement. *See Zambrano, LLC*, 2016 WL 5339552, at *6; *Cox*, 2014 WL 3747605, at *4-5.

**B.    Plaintiffs' Lack Of Consideration Argument Is Not Cognizable And Wrong**

Plaintiffs' lack of consideration argument runs as follows:  The Terms of Service is not a valid contract because the only consideration provided to Plaintiffs, the opportunity to participate in alleged illegal gambling, was unlawful, and there is no other consideration that could support the parties' arbitration agreement.  Opp. at 13-19.

As an initial matter, Skillz does not operate a gambling platform.  But regardless of the legality of Skillz' operation, Plaintiffs' argument that the Terms of Service are invalid because they concern what Plaintiffs call illegal gambling fails because it is plainly a challenge to the validity of the entire contract—not merely the arbitration clause—which is a challenge that must be decided by the arbitrator, not the Court, under *Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440 (2006).  *See* Mot. at 12-14.  Plaintiffs try to circumvent *Buckeye* by recasting their argument as a challenge to the formation of the parties' contract, not its validity.  Specifically, Plaintiffs contend that, because the only benefit Skillz offered to Plaintiffs in exchange for

-8-    Case No.    2:20-cv-00888-JAD-BNW

1  agreeing to the Terms of Service was the ability to participate in allegedly illegal gambling, there

2  was no exchange of lawful consideration and, therefore, no contract.  The problem for Plaintiffs,

3  though, is that the Supreme Court was confronted with the exact same fact pattern in *Buckeye*.

4  The plaintiff in that case argued that there was no enforceable contract where the benefit provided

5  to him was an illegal usurious loan, *Buckeye*, 546 U.S. at 443, and the Court compelled him to

6  take that claim to arbitration.  *See id.* at 449.  In view of that, it is not surprising that Plaintiffs are

7  unable to cite any case allowing a party to circumvent *Buckeye* on the theory they advance here.

8  The lesson of *Buckeye*, which Plaintiffs cannot avoid, is that where the facts demonstrate that two

9  parties reached an agreement containing an arbitration clause, claims that the agreement as a

10  whole (as opposed to merely the arbitration clause) is invalid or unenforceable must be arbitrated.[3]

11  Here, the undisputed facts are that Plaintiffs agreed to abide by the Terms of Service by registering

12  their Skillz accounts after being advised that doing so constituted assent to the Terms of Service.

13  *See supra* at pp. 1-3.  *Buckeye* thus requires that Plaintiffs' attempts to avoid enforcement of that

14  agreement, whether clad in terms of illegality, lack of consideration or anything else, be referred to

15  arbitration.

16      Finally, even if it were the case that a plaintiff could avoid arbitration by claiming that the

17  arbitration agreement was supported only by unlawful consideration, that would not help Plaintiffs

18  here.  Plaintiffs overlook the fact that consideration need not take the form of a benefit conferred

19  upon the offeree but can also be a legal detriment incurred by the offeror.  *See Rupracht v. Union*

20  *Sec. Ins. Co.*, No. 307CV00231BESRAM, 2007 WL 9700737, at *3 (D. Nev. Dec. 20, 2007)

21  ("[C]onsideration may be any benefit conferred or any detriment suffered.") (citing *Shydler v.*

22  *Shydler*, 114 Nev. 192, 200 (1998)).  Here, Skillz incurred a legal detriment by committing to

23  _____

24      [3]  Under *Buckeye* and its progeny, the only type of attack on an agreement containing an
    arbitration clause that a court may consider (aside from one targeted specifically at the arbitration

25  clause) is one that goes to whether the agreement was reached in the first place.  Thus, by way of
    example, where a party denies signing the agreement or claims he or she lacked the capacity to do

26  so, a court may adjudicate it.  *See, e.g., Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*,
    925 F.2d 1136, 1144 (9th Cir. 1991) (holding that the district court should decide whether the

27  signatory had the capacity to bind the plaintiffs to the agreements); *Raebel*, 2020 WL 1659929 at
    *4 (the district court considered, and decided in the affirmative, whether the plaintiff had clicked

28  "Place Order" and formed a contract with the defendant).

-9-      Case No.   2:20-cv-00888-JAD-BNW

DEFENDANT SKILLZ INC.'S REPLY ISO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

mandatory arbitration in the event of a dispute between itself and Plaintiffs.  Skillz' commitment to forego the option of a judicial forum and its "promise to be bound by the arbitration process" are "adequate consideration" for the arbitration agreement.  *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002).  Accordingly, even if the question of the arbitration agreement's validity were before this Court, the answer would be that it is valid and enforceable.

### III.   COUNTS X AND XI MUST BE DISMISSED FOR LACK OF ARTICLE III AND STATUTORY STANDING

In its opening memorandum, Skillz argued for dismissal of Counts X and XI of the First Amended Complaint on the grounds that Plaintiff had neither constitutional nor statutory standing to pursue them.  With respect to the former, Skillz explained that Plaintiffs failed to satisfy Article III's standing requirements because they had not alleged facts establishing the declarations they had requested would redress any injury they had suffered.  Mot. at 18-19.  With respect to the latter, Skillz explained that the gambling statutes Plaintiffs seek to have Skillz declared to be violating did not provide Plaintiffs with a private right of action.  Mot. at 19-20.  Plaintiffs do not dispute either of these points.  They concede that the requested declarations will not redress the only injury they claim to have suffered, monetary losses occasioned by their play of Skillz' games. They also concede that the gambling statutes do not provide them a private right of action that could support their declaratory judgment claims.  These concessions are dispositive.

In arguing against the dismissal of their declaratory judgment claims, Plaintiffs primarily argue that they have presented a ripe dispute to the Court because they claim that Skillz' operations and Terms of Service are illegal, and Skillz maintains otherwise.  Opp. at 21.  That, however, is just the bare minimum required to invoke the Declaratory Judgment Act, which permits federal courts to "declare the rights and other legal relations" of parties who request such relief to resolve an actual controversy.  28 U.S.C. § 2201.  However, the Declaratory Judgment Act does not confer subject matter jurisdiction, *see N. Cty. Commc'ns Corp. v. California Catalog & Tech.*, 594 F.3d 1149, 1154 (9th Cir. 2010) ("[T]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction[.]") (citing *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005)), and it does not excuse parties who would invoke a federal

1    court's jurisdiction from satisfying the requirements of Article III.[4]   Accordingly, because

2    Plaintiffs do not and cannot allege that the declarations they request would redress any imminent

3    injury they stand to suffer, they lack constitutional standing, and Counts X and XI must be

4    dismissed.

5          Plaintiffs also argue that the requested declarations regarding the legality, *vel non*, of

6    Skillz' operations will aid in the adjudication of their other claims, which require Plaintiffs to

7    prove that Skillz' operations are illegal.  Opp. at 22-23.  This argument, however, only undermines

8    Plaintiffs' position, because to the extent Plaintiffs had pleaded valid claims dependent upon

9    proving the illegality of Skillz' operations, the question of the legality of Skillz' operations would

10   be litigated and decided in the context of those claims.  There would be no need or justification for

11   separate declaratory judgment claims.  The reality, however, is that Plaintiffs have not pleaded

12   valid claims for non-declaratory relief dependent on the illegality of Skillz' operations, because

13   many of those claims are barred by the fact that the statutes they invoke do not provide for a

14   private right of action (Mot. at 19-20) and all of them are subject to mandatory arbitration (Mot. at

15   8-17).  Plaintiffs are, therefore, asserting their declaratory judgment claims in an effort to

16   circumvent these obstacles and obtain a judicial ruling on an issue that is not properly before the

17   Court.  The Court should reject that attempt and dismiss Plaintiffs' declaratory judgment claims.

18   *See Frudden v. Pilling*, 842 F. Supp. 2d 1265, 1279-80 (D. Nev. 2012) ("[E]ven assuming

19   Plaintiffs are correct that the Policy and its adoption did not comply with section 392.4644, they

20   have no private right of action to enforce such a grievance.  Nor can they rely on the declaratory

21   judgment statutes.  Where there is no private right of action, there is no jurisdiction to entertain a

22   request for a declaration under 28 U.S.C. § 2201; to hold otherwise would evade the intent of [a

23

24        [4]  *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038 (9th Cir. 2008), cited by Plaintiffs, is
25   not to the contrary.  In that case, the Ninth Circuit reversed a dismissal of a declaratory judgment
     claim in which the plaintiff sought a declaration that the defendants' contracts with third parties
26   were void.  *See id.* at 1056-57.  The court held that the plaintiff had constitutional standing to
     assert the claim because the defendant had threatened to sue the plaintiff for tortiously interfering
27   with the contracts at issue.  *See id.* at 1056.  Accordingly, unlike here, the declaration sought by
     the plaintiff in *Newcal* could have prevented an imminent injury, the costs and burdens the
28   plaintiff would have incurred in defending the defendants' lawsuit.

                                          -11-         Case No.   2:20-cv-00888-JAD-BNW

1  legislature] not to create private rights of action under those statutes and would circumvent the

2  discretion entrusted to the executive branch in deciding how and when to enforce those statutes.")

3  (citation omitted).

4  **CONCLUSION**

5        For the foregoing reasons, the Court should grant Defendant Skillz' Motion to Compel

6  Arbitration and Motion to Dismiss in favor of arbitration or, in the alternative, dismiss Counts X

7  and XI for lack of subject matter jurisdiction and/or failure to state a claim.

8

9  DATED:  September 25, 2020      LEWIS ROCA ROTHGERBER CHRISTIE LLP

10

11        By */s/ E. Leif Reid*

      E. Leif Reid, SBN 5750

12        Attorneys for Skillz Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SKILLZ INC.'S REPLY ISO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that I am an employee of Lewis Roca Rothgerber Christie LLP, and that on this date, I caused the foregoing **DEFENDANT SKILLZ INC.'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** to be served by electronically filing the foregoing with the CM/ECF electronic filing system, which will send notice of electronic filing to the following:

Maurice VerStandig
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
mac@mbvesq.com

DATED this 25th day of September.

_____*/s/ Deborah A. Haffey*_____
An Employee of Lewis Roca Rothgerber Christie LLP

DEFENDANT SKILLZ INC.'S REPLY ISO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS